Opinion
CORRIGAN, J.
This case involves the constitutional limits of a vehicle search based on a passenger’s parole status. Here, an officer, aware that the front seat passenger was on parole, searched the backseat of defendant’s car and recovered drugs and drug paraphernalia from a chips bag and a pair of shoes. Defendant, the driver, sought to suppress that evidence. We conclude that the search was reasonable under the Fourth Amendment to the United States Constitution. We hold that the Constitution permits a search of those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity. Additionally, the officer may search personal property located in those areas if the officer reasonably believes that the parolee owns those items or has the ability to exert control over them.
I. FACTUAL AND PROCEDURAL BACKGROUND
Early in the evening of November 24, 2006, Deputy Sheriff Mihaela Mihai saw defendant’s car turn into a dead-end alley lined with the garages of a condominium complex. When defendant then made a U-tum, Mihai stopped alongside his car and asked whether he was lost. Defendant said no, that he *914 had driven into the alley to avoid making a U-turn on the street. Mihai got out of her car and asked defendant for his driver’s license. As defendant complied, Mihai observed that his arms were covered with abscesses, which she associated with drug use. Asked if defendant was on probation or parole, defendant said, “No.” Mihai then asked him for permission to search the car. Defendant did not respond.
Defendant had three passengers: a man in the front seat, and a woman and her small child in the back. The male passenger said he was on parole. Mihai searched the car on that basis after removing the occupants. In the backseat area, she found a syringe cap in a woman’s purse,[1] two syringes in a chips bag, and some methamphetamine in a pair of shoes.
Defendant waived a preliminary hearing on resulting charges, but moved to suppress the evidence.[2] The suppression hearing took place in a misdemeanor courtroom. Most of the proceedings were not reported. The judge approved a settled statement of the unreported portion of the officer’s testimony. The record does not reflect the condition of the items searched or their precise location in the backseat. The officer had no memory of the style of the shoes.
After defendant’s suppression motion was denied, he pleaded guilty to four misdemeanor counts.[3] The trial court suspended imposition of sentence and placed defendant on informal probation for three years on condition he serve 90 days in the county jail. Defendant appealed from the denial of his suppression motion.
The Court of Appeal reversed, holding that the search could not be justified on the basis of the front seat passenger’s parole status. It articulated an extremely broad rule that defendant Douglas George Schmitz, as the driver, “clearly had a reasonable expectation of privacy in his glove box, his console, his door pockets, his own seat, the backseat—indeed every part of his car except the front passenger seat where the parolee was sitting. . . . Nothing Schmitz did could reasonably have been viewed as ceding authority over his *915 backseat to the parolee. The parolee had no right to open packages, eat food, or even read magazines he found in the backseat.”[4]
We reverse the judgment of the Court of Appeal and clarify the permissible scope of a vehicle search based on a passenger’s parole status.
*916 II. DISCUSSION
Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards. (Cal. Const., art. I, § 24; People v. Lomax (2010) 49 Cal.4th 530, 564, fn. 11 [112 Cal.Rptr.3d 96, 234 P.3d 377]; People v. Woods (1999) 21 Cal.4th 668, 674 [88 Cal.Rptr.2d 88, 981 P.2d 1019] (Woods).) A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant. (U.S. Const., 4th Amend.; Arizona v. Gant (2009) 556 U.S. 332, 338 [173 L.Ed.2d 485, 129 S.Ct. 1710] (Gant); Woods, supra, 21 Cal.4th at p. 674; People v. Bravo (1987) 43 Cal.3d 600, 609 [238 Cal.Rptr. 282, 738 P.2d 336].) California’s parole search clause is one of those exceptions. (Samson v. California (2006) 547 U.S. 843, 846, 850-857 [165 L.Ed.2d 250, 126 S.Ct. 2193] (Samson).)
Under California statutory law, every inmate eligible for release on parole “is subject to search or seizure by a . . . parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause.” (Pen. Code, § 3067, subd. (b)(3).) Upon release, the parolee is notified that “[y]ou and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections [and Rehabilitation] or any law enforcement officer.” (Cal. Code Regs., tit. 15, § 2511, subd. (b)4; see Cal. Code Regs., tit. 15, § 2356 [requiring the department staff to. notify the prisoner of the conditions of parole before release].) There is no dispute that the passenger was on parole and subject to the standard search clause. The Attorney General defends the search solely on that basis.
When considering constitutional challenges to warrantless and suspicion-less parole searches based on a search condition, courts weigh the privacy interests of the parolee against society’s interest in preventing and detecting recidivism. Both we and the United States Supreme Court have concluded that such searches are reasonable, so long as the parolee’s status is known to the officer and the search is not arbitrary, capricious, or harassing. (See Samson, supra, 547 U.S. at pp. 846, 850-856; People v. Sanders (2003) 31 Cal.4th 318, 332-334 [2 Cal.Rptr.3d 630, 73 P.3d 496] (Sanders)-, People v. Reyes (1998) 19 Cal.4th 743, 750-754 [80 Cal.Rptr.2d 734, 968 P.2d 445] (Reyes).) “[P]arolees . . . have severely diminished expectations of privacy by virtue of their status alone.” (Samson, supra, 547 U.S. at p. 852.) “As a convicted felon still subject to the Department of Corrections, a parolee has conditional freedom—granted for the specific purpose of monitoring his transition from inmate to free citizen.” (Reyes, supra, 19 Cal.4th at p. 752.) The state, by contrast, “has an ' “overwhelming interest” ’ in supervising *917 parolees because ‘parolees ... are more likely to commit future criminal offenses.’ Pennsylvania Bd. of Probation and Parole [v. Scott (1998) 524 U.S. 357, 365 [141 L.Ed.2d 344, 118 S.Ct. 2014]] (explaining that the interest in combating recidivism ‘is the very premise behind the system of close parole supervision’).” (Samson, supra, 547 U.S. at p. 853.) “The state has a duty not only to assess the efficacy of its rehabilitative efforts but to protect the public . . . .” (Reyes, supra, 19 Cal.4th at p. 752.) Accordingly, a parolee does not have a legitimate expectation of privacy that would prevent a properly conducted parole search. (Samson, supra, 547 U.S. at p. 852; Reyes, supra, 19 Cal.4th at p. 754.)
Different considerations are present, however, when a parole search affects the privacy interests of third parties. In the context of a residential search, we have expressed no doubt that “ ‘those who reside with [a person subject to a search condition] enjoy measurably greater privacy expectations in the eyes of society’ ” than those enjoyed by the parolee. (Sanders, supra, 31 Cal.4th at p. 329, quoting People v. Robles (2000) 23 Cal.4th 789, 798 [97 Cal.Rptr.2d 914, 3 P.3d 311] (Robles).) Here, we consider the permissible scope of a parole search that infringes on the privacy of a third party driving a car with a parolee passenger. The facts here raise two distinct questions. First, what is the permissible scope of the search of the car’s interior? Second, what is the permissible scope of a search of property located in the car?
We have encountered similar questions in the context of a residential search. In Woods, supra, 21 Cal.4th 668, police officers searched a house based on the probation status of one of the residents. We held that evidence found in the house’s only bedroom was admissible against two other residents who were not probationers. (Id. at pp. 672, 681-682.) We observed that “[i]n California, probationers may validly consent in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term. [Citations.]” (Id. at p. 674.)[5] Relying on the “common authority” theory of consent, we concluded that, if others live with a probationer, the shared areas of their residence may be searched based on the probationer’s consent, given in advance by agreeing to a search condition. (Id. at pp. 674-676, citing Schneckloth v. Bustamonte (1973) 412 U.S. 218 [36 L.Ed.2d 854, 93 S.Ct. 2041] and United States v. Matlock (1974) 415 U.S. 164, 170 [39 L.Ed.2d 242, 94 S.Ct. 988].)[6] We emphasized, however, that our holding would not “legitimize unreasonable searches with respect to nonprobationers who share residences with probationers. In all cases, a search pursuant to a *918 probation search clause may not exceed the scope of the particular clause relied upon. [Citation.] Nor may such a search be undertaken in a harassing or unreasonable manner. [Citations.] Moreover, officers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over. [Citation.]” (Woods, supra, 21 Cal.4th at pp. 681-682.)
In Robles, supra, 23 Cal.4th 789, we reaffirmed that, if someone lives with a probationer, “common or shared areas of their residence may be searched by officers aware of an applicable search condition.” (Id. at p. 798, citing Woods, supra, 21 Cal.4th 668, and Russi v. Superior Court (1973) 33 Cal.App.3d 160 [108 Cal.Rptr. 716].) We further observed that nonprobationers “maintain normal expectations of privacy over their persons. In addition, they retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believe the probationer has authority over those areas.” (Robles, supra, at p. 798.) We found the search unreasonable as to the nonprobationer, Robles, because the officers were unaware that the other resident was on probation. A fortuitous subsequent discovery of a probation search clause could not be relied upon to justify the search. (Robles, at pp. 798-800.)
In Sanders, supra, 31 Cal.4th 318, we considered a Fourth Amendment challenge to a warrantless search of a home occupied by two people, “one of whom was on parole and subject to a search condition of which the police were unaware at the time of the search.” (Sanders, at p. 322.) Addressing the nonparolee’s challenge to the search, we observed that the nonparolee “had a reduced expectation of privacy because she was living with a parolee subject to a search condition . . . .” (Id. at p. 330.) We concluded, however, that she “ ‘need not anticipate that officers with no knowledge of the probationer’s existence or search condition may freely invade their residence in the absence of a warrant or exigent circumstances.’ ” (Ibid., quoting Robles, supra, 23 Cal.4th at p. 799.) In extending the holding of Robles to require that officers know of a resident’s parole search condition before conducting the search, we declined to distinguish between probation and parole searches for this purpose, concluding that “the expectation of privacy of cohabitants is the same whether the search condition is a condition of probation or parole.” (Sanders, supra, 31 Cal.4th at p. 330.)
A. The Officer’s Search of the Backseat of the Car Was Reasonable
This court has not addressed the permissible scope of a vehicle search based on a passenger’s parole status. We begin with the premise, uncontested by either party, that Deputy Mihai engaged in a search by physically entering defendant’s car to look for contraband and property related to the parolee. *919 (See New York v. Class (1986) 475 U.S. 106, 111, 114-115 [89 L.Ed.2d 81, 106 S.Ct. 960].)[7] The burden is on the People to justify the warrantless search as reasonable. (Vale v. Louisiana, supra, 399 U.S. at p. 34; Johnson, supra, 38 Cal.4th at p. 723; Williams, supra, 20 Cal.4th at p. 127.)
The Court of Appeal relied on the consent-based “common authority” standard employed in Woods to conclude that the permissible scope of the parole search was narrowly confined to the parolee’s person and the seat he occupied. It reasoned that only persons with “ ‘common or superior authority’ ” over an area can authorize a search, and that “that rule means the police may ‘only search those portions of the [property] they reasonably believe the probationer has complete or joint control over.’ ” It observed that “there was no evidence that Schmitz, merely by allowing a parolee to ride as a passenger in his car, ceded to that parolee any authority over the car at all, let alone the authority to permit inspections of the vehicle’s interior ‘in his own right.’ ” Accordingly, it concluded that “[a] mere passenger in a vehicle, who claims neither a possessory nor property interest therein, lacks the ‘common authority’ over the vehicle which would allow him either to consent or object to its search.”
The Court of Appeal’s reliance on Woods led it astray. We conclude the rationale employed in Woods, justifying a search based on advance consent by a cohabitant probationer “with common or superior authority over the area to be searched” (Woods, supra, 21 Cal.4th at p. 675), is unworkable when applied to this parolee, who was a mere passenger in defendant’s automobile.[8] There are significant distinctions between the residential probation search in Woods, and the search of defendant’s car based on his passenger’s parole status.
Homes and cars are afforded different levels of Fourth Amendment protection. “[T]he ‘physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.’ ” (Payton v. New York (1980) 445 U.S. 573, 585 [63 L.Ed.2d 639, 100 S.Ct. 1371].) There is good reason to limit a warrantless, suspicionless residential search to areas where an officer reasonably believes the parolee or probationer exercises “common authority.” (Woods, supra, 21 Cal.4th at pp. 674—676; United States v. Matlock, supra, 415 U.S. at p. 171, fn. 7.) “The authority which justifies the third-party *920 consent . . . rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.” (United States v. Matlock, supra, 415 U.S. at p. 171, fn. 7.) The sanctity of the home demands recognition that persons living with a probationer or parolee “retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believe the probationer has authority over those areas.” (Robles, supra, 23 Cal.4th at p. 798; accord, Sanders, supra, 31 Cal.4th at pp. 329-330.)
By contrast, “the expectation of privacy with respect to one’s automobile is significantly less than that relating to one’s home or office.” (South Dakota v. Opperman (1976) 428 U.S. 364, 367 [49 L.Ed.2d 1000, 96 S.Ct. 3092], fn. omitted; accord, Indianapolis v. Edmond (2000) 531 U.S. 32, 54 [148 L.Ed.2d 333, 121 S.Ct. 447].) Both drivers and passengers have a reduced expectation of privacy in the interior of a car and its contents because cars “ ‘trave[l] public thoroughfares,’ Cardwell v. Lewis, 417 U.S. 583, 590 [41 L.Ed.2d 325, 94 S.Ct. 2464] (1974), ‘seldom serv[e] as . . . the repository of personal effects,’ ibid., are subjected to police stop and examination to enforce ‘pervasive’ governmental controls ‘[a]s an everyday occurrence,’ South Dakota v. Opperman, [supra,] 428 U.S. 364, 368 . . . , and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny.” (Wyoming v. Houghton (1999) 526 U.S. 295, 303 [143 L.Ed.2d 408, 119 S.Ct. 1297] (Houghton).) Accordingly, “warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not.” (South Dakota v. Opperman, supra, at p. 367.)
The Court of Appeal also failed to consider that Woods, unlike this case, involved a probation search. Our previous cases have drawn a clear distinction between probation and parole with regard to consent. A probationer explicitly agrees to being placed on probation, often in exchange for an opportunity to avoid incarceration in state prison. Likewise, a probationer who is subject to a search clause has explicitly consented to that condition. (Woods, supra, 21 Cal.4th at p. 674; People v. Bravo, supra, 43 Cal.3d 600, 605-607; People v. Mason (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630], disapproved on another ground in People v. Lent (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545].) By contrast, in parole cases we have not relied on the consent principle that naturally applies in probation. In Reyes we explained that “under the Determinate Sentencing Act of 1976, parole is not a matter of choice. The Board of Prison Terms must provide a period of parole; the prisoner must accept it.” (Reyes, supra, 19 *921 Cal.4th at p. 749, citing Pen. Code, § 3000 et seq.)[9] Finding a consent analysis inapt, we adopted a totality of the circumstances balancing test to evaluate the reasonableness of a warrantless and suspicionless parole search. (Reyes, supra, at pp. 753-754; accord, Samson, supra, 547 U.S. at p. 848.) This approach, unlike the consent exception to the warrant requirement, recognizes the state’s compelling interest to supervise parolees and to ensure compliance with the terms of their release. It also recognizes that “parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.” (Samson, supra, at p. 850.)
“The touchstone of the Fourth Amendment is reasonableness . . . .” (United States v. Knights (2001) 534 U.S. 112, 118-119 [151 L.Ed.2d 497, 122 S.Ct. 587] (Knights).) “When faced with . . . diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable.” (Illinois v. McArthur (2001) 531 U.S. 326, 330 [148 L.Ed.2d 838, 121 S.Ct. 946]; accord, People v. Robinson (2010) 47 Cal.4th 1104, 1120 [104 Cal.Rptr.3d 727, 224 P.3d 55].)
Whether a search is reasonable within the meaning of the Fourth Amendment depends on the “ ‘totality of the circumstances.’ ” (Samson, supra, 547 U.S. at p. 848; see Ohio v. Robinette (1996) 519 U.S. 33, 39 [136 L.Ed.2d 347, 117 S.Ct. 417].) This test includes an assessment of the degree to which a search promotes legitimate governmental interests, balanced against the degree to which it intrudes upon an individual’s privacy. (Samson, supra, at p. 848; Houghton, supra, 526 U.S. at p. 300.) Both we and the United States Supreme Court have employed traditional standards of reasonableness to evaluate the constitutionality of warrantless vehicle *922 searches[10] and parole searches.[11] Accordingly, we consider whether the officer’s search here was reasonable, with a “salient circumstance” being the presence of a parolee subject to a search condition. (Knights, supra, 534 U.S. at p. 118; accord, Samson, supra, 547 U.S. at p. 848; Sanders, supra, 31 Cal.4th at p. 333.)
We reject at the outset the Court of Appeal’s suggestion that the interior of defendant’s car was not subject to any modicum of search based on the passenger’s status as a parolee subject to a search condition.[12] Emphasizing that defendant was not on parole, and that there was “no evidence [defendant] knew his passenger was a parolee,” the Court of Appeal found that defendant “gave up none of his own expectation of privacy, nor of his authority to prevent the officer’s search of the vehicle.” However, “ ‘[o]ur [inquiry] is not what the privacy expectations of particular defendants in particular situations may be ... . Our [inquiry], in terms of the principles announced in Katz[ v. United States (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]], is what expectations of privacy are constitutionally “justifiable” ____’” (Hudson v. Palmer (1984) 468 U.S. 517, 525, fn. 7 [82 L.Ed.2d 393, 104 S.Ct. 3194], quoting United States v. White (1971) 401 U.S. 745, 751-752 [28 L.Ed.2d 453, 91 S.Ct. 1122] (plur. opn. of White, J.).) Here, defendant knowingly allowed passengers to ride in his car, thereby opening its interior to them and allowing them to see and access some of its contents. (Cf. United States v. Jacobsen (1984) 466 U.S. 109, 117 [80 L.Ed.2d 85, 104 S.Ct. 1652]; Smith v. Maryland (1979) 442 U.S. 735, 743-744 [61 L.Ed.2d 220, 99 S.Ct. 2577].) Once an officer learns of the passenger’s parole status (see Sanders, supra, 31 Cal.4th at p. 330; Robles, supra, 23 Cal.4th at p. 799),[13] and informs the driver of it, the driver cannot reasonably expect to shield the interior of the car completely from any search aimed at *923 uncovering criminal activity by the parolee. However, the driver can reasonably expect that the scope of the search will be “ ‘strictly tied to and justified by’ ” the circumstances authorizing it (Terry v. Ohio (1968) 392 U.S. 1, 19 [20 L.Ed.2d 889, 88 S.Ct. 1868]), and that the search will not be conducted in an arbitrary, capricious, or harassing manner (Woods, supra, 21 Cal.4th at p. 682; Reyes, supra, 19 Cal.4th at pp. 752-754; see Samson, supra, 547 U.S. at p. 856).
The Court of Appeal’s focus on defendant’s ignorance of his passenger’s parole status when admitting him to the car is misplaced. We have never suggested that a probation or parole search of a house would be unlawful unless a defendant knew his or her cohabitant was a probationer or a parolee. No good reason appears to create such a rule for vehicle searches. Because the primary purpose of the exclusionary rule is to deter unlawful police conduct, the operative question is whether the officer knew of the passenger’s parole status before conducting the search. (See Sanders, supra, 31 Cal.4th at pp. 324, 332-335; Robles, supra, 23 Cal.4th at pp. 799-800; see also id. at p. 800 [“a knowledge-first requirement is appropriate to deter future police misconduct and to effectuate the Fourth Amendment’s guarantee against unreasonable searches and seizures”].)
Turning to the scope of the search, our state statute specifies only that the parolee “is subject to search or seizure by a . . . parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause.” (Pen. Code, § 3067, subd. (b)(3).) While that statute provides authority for the search, it does not purport to define its scope in any given case. Rather, the limits of a parole search flow from the nexus between the parolee and the area or items searched. How we define that nexus depends on the totality of the circumstances, and takes into account such factors as the nature of that area or item, how close and accessible the area or item is to the parolee, the privacy interests at stake, and the government’s interest in conducting the search.
As noted, the state’s interest in supervising parolees is substantial. {Samson, supra, 547 U.S. at p. 853.) Parolees “ ‘are more likely to commit future criminal offenses’ ” {ibid.) and pose “grave safety concerns that attend recidivism” {id. at p. 854).[14] Additionally, because of their conditional release into society, parolees have an even greater “incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the *924 ordinary criminal . . . .” (Knights, supra, 534 U.S. at p. 120 [discussing probationers]; accord, Samson, supra, at pp. 854-855 [the “incentive-to-conceal concern” applies with “even greater force” to parolees].) Warrantless, suspicionless searches are a vital part of effective parole supervision {Reyes, supra, 19 Cal.4th at p. 752; Samson, supra, at p. 854), and are mandated in California as a condition of every parolee’s release (Pen. Code, § 3067, subd. (b)(3); Cal. Code Regs., tit. 15, § 2511,- subd. (b)4).
On the other side of the balance, as noted, a driver has a reduced expectation of privacy with regard to an automobile. (South Dakota v. Opperman, supra, 428 U.S. at p. 368; Cardwell v. Lewis, supra, 417 U.S. 583, 590.) A driver’s expectation of privacy is further diminished when he allows others to ride in his car, thus ceding some measure of privacy to them. (Cf. United States v. Jacobsen, supra, 466 U.S. at p. 117; Smith v. Maryland, supra, 442 U.S. at pp. 743-744; Sanders, supra, 31 Cal.4th at p. 330.)
The Court of Appeal placed the passenger parolee in a legal bubble and concluded that defendant retained a reasonable expectation of privacy in “every part of his car except the front passenger seat where the parolee was sitting.” In so holding, it artificially segmented the car’s interior and improperly limited the permissible scope of a search strictly to the parolee’s person and the seat he or she occupies. No authority supports such a circumscribed approach.
To the contrary, the law does not presume that a front seat passenger has nothing to do with items located elsewhere in the passenger compartment of a car. In Maryland v. Pringle (2003) 540 U.S. 366 [157 L.Ed.2d 769, 124 S.Ct. 795], a police officer conducting a routine traffic stop obtained the driver’s consent to search the car. He located a large sum of cash in the glove box and five plastic baggies containing cocaine hidden behind the backseat armrest. Upon questioning, the driver and two passengers declined to say who owned the drugs or money. {Id. at pp. 368-369.) Observing that the baggies of cocaine were in an area “accessible” to all three passengers, the court found it “an entirely reasonable inference from these facts that any or all three of the occupants [(including the front seat passenger)] had knowledge of, and exercised dominion and control over, the cocaine,” thus justifying their arrests. (Id. at p. 372.) Similarly, in People v. Vermouth (1971) 20 Cal.App.3d 746 [98 Cal.Rptr. 65], police officers stopped a car for a traffic violation. The Court of Appeal held that the officers had probable cause to arrest both the passenger and the driver for possession of a billy club seen resting against the driver’s door. (Id. at p. 756.)
Moreover, the Court of Appeal’s rigid view does not reflect modem social conventions, which provide a framework for assessing whether an *925 expectation of privacy is reasonable. (Oliver v. United States (1984) 466 U.S. 170, 178 & fn. 8 [80 L.Ed.2d 214, 104 S.Ct. 1735]; Rakas v. Illinois (1978) 439 U.S. 128, 143, fn. 12 [58 L.Ed.2d 387, 99 S.Ct. 421]; cf. Georgia v. Randolph (2006) 547 U.S. 103, 111-112 [164 L.Ed.2d 208, 126 S.Ct. 1515].) The vehicle here was a noncommercial five-passenger car. Typically, automobile occupants do not act as if they were confined in separate divided compartments, coats and other possessions piled on their laps, elbows clamped at their sides. A front seat passenger, even if only a casual acquaintance of the driver, will likely feel free to stow personal items in available space at his or her feet, in the door pocket, or in the backseat, until they are needed or the journey ends. Even if the driver’s personal preferences are otherwise, it is not reasonable to expect that the passengers will always adhere to them. The driver is not necessarily in a position to supervise his passengers at every moment, nor is he in a position to control their every move once they are in the car. As the Houghton court observed, an occupant of an automobile may hide contraband without the other occupants’ knowledge or permission. (Houghton, supra, 526 U.S. at p. 305.) For these reasons, the permissible scope of a search is “not defined by the subjective intent of those asserting the rights.” (Hudson v. Palmer, supra, 468 U.S. at p. 525, fn. 7.) Rather, a reasonable officer may take all of the circumstances into account when conducting a parole search of an automobile for property, contraband, or weapons associated with the parolee.[15]
In addition, a standard five-passenger automobile generally affords ready access to areas in both the front and the back seats. (See New York v. Belton (1981) 453 U.S. 454, 460 [69 L.Ed.2d 768, 101 S.Ct. 2860] (Belton), holding limited in part on another ground in Gant, supra, 556 U.S. 332, 344-348.) This fact is particularly significant given the Supreme Court’s observation that parolees have a heightened incentive to conceal or quickly dispose of incriminating evidence. (Samson, supra, 547 U.S. at pp. 854-855; accord, Knights, supra, 534 U.S. at p. 120.) A parolee, more than an ordinary passenger, may be expected to conceal contraband or weapons in places other *926 than on his person, well aware that his own privacy rights are severely limited. Under the Court of Appeal’s approach, a parolee passenger could frustrate a valid parole search simply by sitting in the front seat of the car and placing or discarding his belongings in the back. Imposing such an artificially narrow rule frustrates the legitimate goals of parole. “When balancing the competing interests, our determinations of ‘reasonableness’ under the Fourth Amendment must take account of [the] practical realities” facing the officer. (Houghton, supra, 526 U.S. at p. 306.)
Balancing these factors, we reject the Court of Appeal’s holding. Instead we hold that a vehicle search based on a passenger’s parole status may extend beyond the parolee’s person and the seat he or she occupies. Such a search is not without limits, however. The scope of the search is confined to those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity.[16] Within these limits, the officer need not articulate specific facts indicating that the parolee has actually placed property or contraband in a particular location in the passenger compartment before searching that area. Such facts are not required because the parole search clause explicitly authorizes a search “without cause.” (Pen. Code, § 3067, subd. (b)(3); see Reyes, supra, 19 Cal.4th at pp. 753-754.)[17]
Applying this rule, we conclude that the officer’s search of the backseat of defendant’s car was reasonable. Defendant was driving an older model Oldsmobile or Buick. There was no evidence that the car was used for a commercial purpose or that it had any type of barrier (as might be found in a taxicab) dividing the front seats from the backseat. Nor would commonly held social conventions suggest to the officer that the passenger’s movement was restricted only to the seat he occupied. (Cf. Georgia v. Randolph, supra, 547 U.S. at pp. 111-112.) Considering the layout of a standard five-passenger car, it was objectively reasonable for the officer to expect that this parolee *927 could have stowed his personal property in the backseat, tossed items behind him, or reached back to place them in accessible areas upon encountering the police. Accordingly, under these circumstances, the parolee status of the front seat passenger justified a warrantless search of the backseat area where the chips bag and shoes were located.[18]
Defendant would state the rule more restrictively. He contends that a search of an automobile based on a passenger’s parole status is limited to the areas immediately accessible to the parolee. Defendant seems to invoke a limiting principle applicable to a search incident to an arrest. Such a search is limited to the area within the arrestee’s “ ‘immediate control,’ ” meaning “the area from within which he might gain possession of a weapon or destructible evidence.” (Chimel v. California (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 89 S.Ct. 2034] (Chimel).)
But that test undermines, rather than assists, defendant’s position. In upholding a search of an automobile incident to arrest, the Supreme Court in Belton, supra, 453 U.S. 454, observed that “the relatively narrow compass of the passenger compartment of an automobile” is in fact “generally, even if not inevitably, within ‘the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].’ ” (Id. at p. 460, quoting Chimel, supra, 395 U.S. at p. 763.) Accordingly, the court adopted a bright-line rule that “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.” (Belton, supra, at p. 460, fns. omitted.)
This search was not incident to arrest, and we do not adopt a bright-line rule here. Nonetheless, Belton’s analysis is instructive. The narrow and relatively nonprivate nature of the passenger compartment, and law enforcement’s need for a workable rule to monitor parolees, justify our rejection of a rule that would require the officer to assess in each case the parolee’s immediate grasping distance and limit the search to that area.[19] Allowing a *928 search of areas where, under the circumstances, the officer reasonably expects that the parolee could have placed or discarded items furthers the purposes of a warrantless parole search to facilitate close monitoring of the parolee’s conduct and to deter the commission of crime. (See Terry v. Ohio, supra, 392 U.S. at p. 19 [the scope of the search must be commensurate with the rationale authorizing it].)
Justice Liu urges that our holding “defines the scope of a valid search in terms that exceed the scope of the parole search condition.” (Conc. & dis. opn. of Liu, J., post, at p. 938.) Our colleague would hold that a properly conducted parole search is limited to “the parolee’s person and to ‘any property under [the parolee’s] control.’ ” (Ibid., quoting Cal. Code Regs., tit. 15, § 2511, subd. (b)4.)[20] He contends that the “available authority interprets ‘control’ more naturally and sensibly to mean not mere physical access but rather ownership, possession, or. authority over the property searched.” (Conc. & dis. opn. of Liu, J., post, at p. 940.)
We respectfully disagree with the limits Justice Liu seeks to draw from the relevant authority. As noted, our parole statute provides that every parolee is subject to warrantless and suspicionless parole searches. (Pen. Code, § 3067, subd. (b)(3).) It does not purport to define the limits of a properly conducted parole search. Nor is it correct to say that the scope of the officer’s search is strictly tied to the literal wording of the notification given to the parolee upon release. (Conc. & dis. opn. of Liu, J., post, at p. 938, citing Cal. Code Regs., tit. 15, § 2511, subd. (b)4 [parolee must be notified that “[y]ou and your residence and any property under your control” are subject to warrantless search].) While we have so held for a probation search clause based on consent (Woods, supra, 21 Cal.4th at pp. 674-675, 682; accord, Walter v. United States (1980) 447 U.S. 649, 656 [65 L.Ed.2d 410, 100 S.Ct. 2395]), as *929 we have explained, our rule here does not derive from a theory of advance consent by either the parolee or the driver. Rather, we assess the reasonableness of this search based on the totality of the circumstances, with the passenger’s parole status, applicable search condition, and presence in a car all being salient circumstances. (Samson, supra, 547 U.S. at p. 848; Knights, supra, 534 U.S. at p. 118; Sanders, supra, 31 Cal.4th at p. 333.) Finally, the authority Justice Liu cites for his interpretation of “control” amounts to six Court of Appeal decisions (cone. & dis. opn. of Liu, J., post, at pp. 940-941), five of which involve searches of residences, not automobiles, and predate the most recent pronouncements from this court and the United States Supreme Court on the validity of parole searches (see ante, at pp. 916-917).[21]
Justice Liu’s “control” test proves problematic when applied to a search of the interior of an automobile. He posits that “Officer Mihai had lawful authority to search the parolee’s person and the area immediately adjacent to the parolee. Absent unusual circumstances, a further search of the passenger compartment would have required Officer Mihai to make a reasonable determination of what areas or property in the car were under the parolee’s control.” (Cone. & dis. opn. of Liu, J., post, at p. 945.) It would seem that a passenger’s act of tossing contraband behind him into the backseat would amount to an exercise of “control” over that area. If so, would our colleague require the officer to witness such conduct? To so require would demand an articulation of cause, a requirement expressly at odds with the search condition.
Justice Liu urges that his approach is consistent with the holdings in Maryland v. Pringle, supra, 540 U.S. 366 and People v. Vermouth, supra, 20 Cal.App.3d 746. (Cone. & dis. opn. of Liu, J., post, at p. 945.) While we consider those cases illustrative, they are distinguishable in that they involved probable cause to arrest, while this case involves a suspicionless search. Justice Liu further suggests that the officer could have determined the relationship among the car’s occupants or sought an admission about who owned property located in the car. We have already rejected the Court of Appeal’s holding that would require evidence of common authority over the car or admissions of property ownership before searching beyond the seat the parolee passenger physically occupied. Justice Liu states that he would not endorse the Court of Appeal’s rule. (Cone. & dis. opn. of Liu, J., post, at pp. 936-937.) Yet, in the final analysis his approach does just that.
In sum, because “cause” is not required, an officer does not have to articulate facts demonstrating that the parolee actually placed personal items *930 or discarded contraband in the open areas of the passenger compartment. That is not to say, as Justice Liu asserts, that an officer can always search the open areas of the passenger compartment of a standard five-passenger car. (Conc. & dis. opn. of Liu, J., post, at pp. 936, 938.) Rather, an officer may search only those areas where he or she reasonably expects, in light of all the circumstances, that the parolee could have placed personal items or discarded contraband. Thus, a parole search of an automobile based on a passenger’s parole status does have reasonable limits. To the extent he argues otherwise, Justice Liu criticizes a rule of his own articulation, not the rule we adopt here.[22]
B. The Officer’s Search of the Chips Bag and Shoes Was Reasonable
We now turn to the officer’s search of the chips bag and the pair of shoes located in the backseat. (See ante, at p. 914 & fn. 1.) Because there is no testimony in the record that the contraband found inside these items was in plain view, we treat the officer’s conduct as a search. (See United States v. Ross (1982) 456 U.S. 798, 822-823 [72 L.Ed.2d 572, 102 S.Ct. 2157] [“the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view”].)
The United States Supreme Court has recognized that, like the automobile itself, property transported inside the automobile is subject to a reduced expectation of privacy. (Houghton, supra, 526 U.S. at p. 303.) As noted, California’s parole search clause authorizes warrantless and suspicionless parole searches. (Pen. Code, § 3067, subd. (b)(3); see Reyes, supra, 19 Cal.4th at pp. 753-754.) Taking these factors into account, along with “the relatively narrow compass of the passenger compartment of an automobile” (Belton, supra, 453 U.S. at p. 460), we hold that an officer conducting a search of a vehicle’s passenger compartment based on a passenger’s parole status may search items of personal property if the officer reasonably believes that the parolee owns the items or has the ability to exert control over them.[23]
*931 Defendant argues that the officer’s search of the shoes and chips bag was unlawful because “by virtue of their very nature and location, [these] items in the back seat . . . were either obviously feminine” or clearly belonged to the woman passenger in the backseat, rather than the male parolee in the front. He relies for this point on Baker, supra, 164 Cal.App.4th 1152, but his argument lacks merit.
In Baker, an officer stopped a car for speeding. The male driver told the officer he was on parole. Baker, the only passenger, had a purse at her feet. A search of the purse revealed methamphetamine. The Court of Appeal held the search unreasonable. It observed that “a purse has been recognized as an inherently private repository for personal items” (Baker, supra, 164 Cal.App.4th at p. 1159) and that “[h]ere, there is nothing to overcome the obvious presumption that the purse belonged to the sole female occupant of the vehicle who was not subject to a parole-condition search” (id. at p. 1160). The purse sat at the female passenger’s feet and the officer recounted no conduct, such as furtive movements, by the driver towards the purse. (Id. at pp. 1156-1157.) The Court of Appeal concluded that, “on these facts . . . there could be no reasonable suspicion that the purse belonged to the driver, that the driver exercised control or possession of the purse, or that the purse contained anything belonging to the driver. [Citation.]” (Id. at p. 1159.)
Turning first to the chips bag, it is plainly distinguishable from the woman’s purse at issue in Baker. A chips bag is not an “inherently private repository for personal items” (Baker, supra, 164 Cal.App.4th at p. 1159), and has no distinct characteristics that would identify it as belonging to any particular person. Unlike a purse, which is not generally shared by two or more people, a chips bag is not so carefully guarded. Occupants of a car commonly share food like a bag of chips during a journey. Once the bag’s contents are consumed, it becomes mere trash, or, in some instances, a receptacle for trash. Any occupant of the car would be free to commandeer an empty chips bag to discard or conceal items, without objection by the others. Further, while not dispositive, neither nonparolee occupant of the car claimed exclusive control over the chips bag at the time of the search. Considering these circumstances, it was objectively reasonable for the officer to believe that the parolee was able to reach back and conceal contraband inside the chips bag.[24]
*932 The shoes present a closer question. The record does not reveal the shoes’ owner or whether the style of the shoes was gender specific. (See ante, at p. 914.) It is the People’s burden to present facts justifying a warrantless search. (Vale v. Louisiana, supra, 399 U.S. at p. 34; Johnson, supra, 38 Cal.4th at pp. 723, 726; Williams, supra, 20 Cal.4th at p. 127.) We conclude, however, that under the circumstances of this case, the ambiguous record is not fatal to the People’s position.
The shoes were located in the backseat. Regardless of actual ownership, it was objectively reasonable for the officer to believe that the parolee was able to reach back to hide contraband inside the shoes. In this respect, an open shoe differs markedly from a purse, which is likely to be more closely monitored by its owner or otherwise secured.
Additionally, any further evidence regarding the style of the shoes would have only undercut defendant’s position. Had such evidence shown that the shoes were a man’s style, it would have strengthened the People’s position that they were properly searched as the property of the male parolee. In this regard, the shoes’ location in the backseat was equally accessible to the defendant driver and his male passenger, both seated in the front. Without an express claim of ownership, which was not asserted here, a pair of men’s shoes is not likely to have distinct characteristics identifying it as the property of the male driver, rather than the male passenger.
Conversely, had further evidence shown that the shoes were a woman’s style or diminutive in size, it would be reasonable to conclude, as defendant has argued, that they belonged to the female passenger (or her small child) seated in the back. But that fact would have necessarily undermined a claim that the officer’s search infringed on the driver’s reasonable expectation of privacy. As the high court has explained, to claim Fourth Amendment protection, defendant must demonstrate that he personally has an expectation of privacy in the property searched. (Minnesota v. Carter (1998) 525 U.S. 83, 88 [142 L.Ed.2d 373, 119 S.Ct. 469].)[25] “ ‘Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.’ ” (Rakas v. Illinois, supra, 439 U.S. at pp. 133-134, quoting Alderman v. United States (1969) 394 U.S. 165, 174 [22 L.Ed.2d 176, 89 S.Ct. 961].) As it stands, the Attorney General has not argued that defendant lacked a Fourth Amendment right to challenge the search of the shoes. We conclude that the ambiguous record inured to defendant’s benefit. We further conclude, based on the factors identified above, that the officer’s search of the shoes was reasonable.
*933 Because the officer could search the chips bag and shoes located in the backseat of defendant’s car based on the passenger’s parole status and applicable search condition, the trial court properly denied defendant’s motion to suppress evidence.
III. DISPOSITION
The judgment of the Court of Appeal is reversed.
Cantil-Sakauye, C. J., Baxter, J., and Chin, J., concurred.

 The Attorney General does not attempt to justify the search of the purse, stating that no evidence derived therefrom was used to sustain charges against defendant. As the Attorney General notes, a syringe cap is not contraband, and defendant’s trial motion did not identify the syringe cap in his list of evidence he sought to suppress.

 Penal Code section 1538.5.

 Driving under the influence of a drug or alcohol (Veh. Code, § 23152, subd. (a)), with a prior; being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)); unauthorized possession of a syringe (Bus. & Prof. Code, former § 4140, repealed by Stats. 2011, ch. 738, § 2); and child endangerment (Pen. Code, § 273a, subd. (b)). A charge of possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) was dismissed prior to the suppression hearing.

 In the Court of Appeal, defendant also contended the evidence should have been suppressed as the product of an illegal detention by the officer. The court rejected this contention, and defendant does not renew it here.
Writing separately, Justices Werdegar and Liu urge that defendant failed to challenge the permissible scope of the parole search in the trial court, and thus did not create an adequate record to litigate that issue on appeal. (Cone. & dis. opn. of Werdegar, J., post, at pp. 934-935; cone. & dis. opn. of Liu, J., post, at p. 935.) Our colleagues would reverse the Court of Appeal on the ground that defendant forfeited the claim now before us. They urge that it is unnecessary to reach the merits of the Fourth Amendment question on which we granted review. (Cone. & dis. opn. of Werdegar, J., post, at pp. 934-935 & fn. 2; cone. & dis. opn. of Liu, 1, post, at pp. 935, 947.) We respectfully find this argument unpersuasive.
It is the People’s burden to justify a warrantless search. (Vale v. Louisiana (1970) 399 U.S. 30, 34 [26 L.Ed.2d 409, 90 S.Ct. 1969]; People v. Johnson (2006) 38 Cal.4th 717, 723 [42 Cal.Rptr.3d 887, 133 P.3d 1044] (Johnson)-, People v. Williams (1999) 20 Cal.4th 119, 127 [83 Cal.Rptr.2d 275, 973 P.2d 52] (Williams).) The defendant does have the burden to file a motion asserting the absence of a warrant and, if the prosecution offers a justification for the warrantless search or seizure, to present arguments as to why that justification is inadequate. (Williams, supra, at p. 130.) Here, defendant’s written suppression motion challenged both his detention and the search of his vehicle. He argued generally that the officer’s conduct was not supported by a warrant, “particularized suspicion,” or lawful consent, and that it was the People’s burden to justify the warrantless search and seizure. According to the settled statement, the officer testified at the suppression hearing that she searched the defendant’s car based on the passenger’s parole status. Thereafter, in the reported portion of the hearing, both parties focused their brief oral argument on the detention issue. The trial court denied defendant’s motion in its entirety.
In Williams we held that the defendant’s failure to orally argue a point he had raised in his written pleading did not forfeit the issue or otherwise excuse the gap in the prosecution’s evidence on the facts of that case. (Williams, supra, 20 Cal.4th at pp. 137-138.) Whether this defendant forfeited his challenge to the parole search is not as clear cut as our colleagues suggest, particularly absent a verbatim transcript of a substantial portion of the suppression hearing. What is clear is that the Attorney General nowhere raised the forfeiture issue in the Court of Appeal, in her petition for review here, or in her briefing before this court. The Court of Appeal addressed the legality of the parole search after full briefing by the parties. The Attorney General’s petition for review asked: “When conducting a search authorized by an automobile passenger’s parole condition, can the police search those areas of the passenger compartment that reasonably appear subject to the parolee’s access?” All seven justices voted to grant review on this significant and recurring legal question. Both parties have briefed the merits of the issue in this court and, as explained below, we find the record adequate to resolve it. Accordingly we exercise our discretion to do so. (See People v. Brendlin (2008) 45 Cal.4th 262, 267, fn. 1 [85 Cal.Rptr.3d 496, 195 P.3d 1074].) To do otherwise would be unfair to the parties, particularly defendant, who was not asked to address the forfeiture issue in briefing or at oral argument. (See Gov. Code, § 68081.)

 As will be discussed below (post, at pp. 920-921 & fn. 9), we have never relied on a consent rationale to uphold a parole search condition.

 This court further held that an officer’s reliance on the probation status of one of the residents as a pretext to secure evidence against the other residents did not render the search of the common area unconstitutional. (Woods, supra, 21 Cal.4th at pp. 671-672.)

 Mihai did not testify that she saw incriminating evidence in plain view from where she stood outside of defendant’s vehicle. (See Horton v. California (1990) 496 U.S. 128, 136-137 [110 L.Ed.2d 112, 110 S.Ct. 2301]; Texas v. Brown (1983) 460 U.S. 730, 739-740 [75 L.Ed.2d 502, 103 S.Ct. 1535] (plur. opn. of Rehnquist, J.).)

 There may be circumstances that could demonstrate a parolee passenger is exercising common authority over a vehicle through joint ownership, lease, or physical possession, for example. Such facts are not present here. We offer no opinion on the permissible scope of such a search.

 In 1996, the Legislature enacted Penal Code section 3067. At the time of defendant’s release on parole, the statute provided that, for crimes committed on or after January 1, 1997, the inmate had to agree in writing to a mandatory search clause as a condition of parole. (Pen. Code, § 3067, subd. (a); id., subd. (c); both added by Stats. 1996, ch. 868, § 2, pp. 4656-4657.) If the inmate did not agree, he or she was required to remain imprisoned and serve the remainder of the sentence without worktime credits. (See Pen. Code, § 3067, former subd. (b); see also Pen. Code, former § 3060.5 [providing that “the parole authority shall revoke the parole of any prisoner who refuses to sign a parole agreement setting forth the general and any special conditions applicable to the parole . . . and shall order the prisoner returned to prison”].) The statutes were amended in June 2012 to omit the requirement that the parolee expressly agree in writing to the search clause, and to omit the parolee’s lack of agreement as a basis for denying or revoking parole. (Stats. 2012, ch. 43, § 49.) Before this change, one appellate court had indicated that a parolee’s acceptance of a search condition under Penal Code section 3067, former subdivision (a) constituted consent. (See People v. Middleton (2005) 131 Cal.App.4th 732, 739-740 [31 Cal.Rptr.3d 813].) The Attorney General, however, expressly disavows any reliance on a theory of advance consent to justify the search in this case. Because we assess the reasonableness of the search without regard to an advance-consent theory, we need not resolve this question. (Cf. Samson, supra, 547 U.S. at p. 852, fn. 3.)

 See Houghton, supra, 526 U.S. at pages 300-307 (officer with probable cause to search a car may conduct a warrantless search of all belongings of driver and passengers that are capable of concealing the object of the search); New York v. Class, supra, 475 U.S. at pages 116-118 (officer may conduct a warrantless search of vehicle to remove items on dashboard obscuring vehicle identification number); South Dakota v. Opperman, supra, 428 U.S. at pages 367-373 (officer may conduct a warrantless inventory search of impounded vehicle); In re Arturo D. (2002) 27 Cal.4th 60, 68 [115 Cal.Rptr.2d 581, 38 P.3d 433] (officer may conduct a limited, warrantless search of vehicle incident to traffic stop for license or registration when driver fails to produce those documents).

 See Samson, supra, 547 U.S. at page 848 (parole search condition upheld); Reyes, supra, 19 Cal.4th at pages 750-754 (same); see also Knights, supra, 534 U.S. at pages 118-119 (probation search condition upheld).

 Notably, defendant does not adopt this position in his briefing before us.

 Because California law requires that all parolees be subject to warrantless and suspicion-less searches as a condition of their release, an officer’s knowledge of a parolee’s status is equivalent to knowledge of the applicable search condition. (People v. Middleton, supra, 131 Cal.App.4th at pp. 739-740.)

 The truncated record here does not reflect an expression by Deputy Mihai of concern for her safety once her backup officer arrived and the occupants were removed from the car. We do note, however, the Supreme Court’s observation that traffic stops are “especially fraught with danger to police officers.” (Michigan v. Long (1983) 463 U.S. 1032, 1047 [77 L.Ed.2d 1201, 103 S.Ct. 3469].)

 Justice Liu postulates that a different etiquette may apply to a driver who picks up a rider in a casual carpool or volunteers to transport a group of parent chaperones on an elementary school field trip. (Conc. & dis. opn. of Liu, J., post, at pp. 936, 938-939.) Of course, those circumstances are not at play here. This officer encountered a driver with abscesses on his arms suggesting drug use, and a passenger on parole. Testimony at the suppression hearing established that defendant and the parolee had known each other for approximately three years at the time of the search. Accordingly, we have no occasion to consider what modem social conventions would govern, for example, a driver’s decision to allow a stranger into his or her private vehicle for the benefit of gaining access to a carpool lane. (See conc. & dis. opn. of Liu, J., post, at p. 938.) Further, while it is true that this officer was not privy to the precise relationship between the parties, the Fourth Amendment permits the officer to “rel[y] on what [is] usual and place[s] no burden on the [officer] to eliminate the possibility of atypical arrangements, in the absence of reason to doubt that the regular scheme was in place.” (Georgia v. Randolph, supra, 547 U.S. at p. 112.)

 The facts here do not involve a search of closed compartments of the car like the glove box, center console, or trunk, and we express no opinion on whether a search of such closed-off areas could be based solely on a passenger’s parole status. The reasonableness of such a search must necessarily take into account all the attendant circumstances, including the driver’s legitimate expectation of privacy in those closed compartments, the passenger’s proximity to them, and whether they were locked or otherwise secured.

 In Reyes, we affirmed that a parole search may be reasonable even in the absence of particularized suspicion so long as the search is not arbitrary, capricious, or harassing. (Reyes, supra, 19 Cal.4th at pp. 753-754.) As we noted there, “ ‘although “some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] ... the Fourth Amendment imposes no irreducible requirement of such suspicion.” ’ ” (Id. at p. 751, quoting New Jersey v. T. L. O. (1985) 469 U.S. 325, 342, fn. 8 [83 L.Ed.2d 720, 105 S.Ct. 733]; accord, Samson, supra, 547 U.S. at pp. 846, 857; see In re Randy G. (2001) 26 Cal.4th 556, 565 [110 Cal.Rptr.2d 516, 28 P.3d 239].)

 In addition to the rule we adopt here, an officer is authorized to search a vehicle and its occupants based on legitimate and articulated officer safety concerns, under the guidelines set forth in previous cases. (See, e.g., Arizona v. Johnson (2009) 555 U.S. 323, 331-332 [172 L.Ed.2d 694, 129 S.Ct. 781] [permissible patdown of occupants based on reasonable suspicion that they may be armed and dangerous]; New York v. Class, supra, 475 U.S. at pp. 108, 114 [permissible seizure of a weapon protruding from under driver’s seat]; Michigan v. Long, supra, 463 U.S. at pp. 1045-1050 [permissible search of passenger compartment of automobile based on reasonable suspicion that suspect is dangerous and may gain immediate control of weapon].)

 In Gant, supra, 556 U.S. 332, a divided Supreme Court rejected a sweeping interpretation of Belton that permitted automobile searches incident to arrest even after the arrestee had been safely secured away from the vehicle. (Gant, supra, at pp. 335, 341-347; id. at p. 354 (conc. *928 opn. of Scalia, J.).) Because concerns about officer safety and evidence destruction underlie this exception to the warrant requirement, the court concluded that a vehicle search incident to an arrest cannot be justified when these concerns are not implicated. (Id. at pp. 335, 338.) Accordingly, it held that the police may search the passenger compartment of an automobile incident to arrest only when (1) “the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search” (id. at p. 343) or (2) there is reason to believe that evidence of the offense for which the arrest was made might be found in the vehicle (id. at pp. 343-344, 351). A close reading of Gant confirms that, under these two circumstances, Belton’s holding with respect to the permissible scope of an automobile search incident to arrest remains intact. (People v. Nottoli (2011) 199 Cal.App.4th 531, 555 [130 Cal.Rptr.3d 884].)
There is no similar reason to limit a parole search to the area within the parolee’s reach at the moment of the search. For the reasons previously explained (see ante, at pp. 917, 923-924), an officer has a compelling interest in detecting criminal activity by a parolee regardless of whether the parolee has been safely removed from the car and secured.

 We discuss in further detail below the limits on a parole search of items of property located in an automobile. (Post, at pp. 930-931.)

 We discuss People v. Baker (2008) 164 Cal.App.4th 1152 [79 Cal.Rptr.3d 858] (Baker), the lone Court of Appeal decision to confront a parole search of an automobile, post, at page 931.

 We do not hold, categorically or otherwise, that an officer may always search “the backseat, the area behind the backseat headrests, the backseat foot areas, any door pockets in the front or back on both sides of the car, and the floor areas under both front seats . . . .” (Conc. & dis. opn. of Liu, J., post, at p. 936.) Nor does the rule we announce today, taken to its logical conclusion, necessarily authorize a search of “closed-off areas” like the glove box or center console. (Id. at p. 942.) Justice Liu questions why such areas would be exempt. (Ibid.) The simple answer is that that is the way the common law evolves, incrementally and on a case-by-case basis. A more nuanced answer is that, applying a totality of the circumstances approach, the facts in another case may show that it would be unreasonable to expect that a parolee had access to those areas.

 We use the concept of “reasonable belief’ in the same manner as the high court. The determination “must ‘be judged against an objective standard: would the facts available to the officer at the moment. . . “warrant a man of reasonable caution in the [requisite] belief’ ’....” *931 (Illinois v. Rodriguez (1990) 497 U.S. 177, 188 [111 L.Ed.2d 148, 110 S.Ct. 2793]; accord, Sanders, supra, 31 Cal.4th at p. 334.)

 Consistent with our analysis above, we do not impose any further requirement that the officer articulate specific facts indicating that the parolee actually exercised control over the item of property in this manner. (See ante, at p. 926 & fn. 17.)

 There was no evidence of a familial relationship between defendant and the female passenger or her child that would allow him to claim an ownership interest in their possessions.