Filed 5/29/13  P. v. Shack CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>WILLIAM EDWARD SHACK,<br><br>　　　Defendant and Appellant. | B245129<br><br>(Los Angeles County<br>Super. Ct. No. BA392604) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie A. Swain, Judge.  Affirmed.

　　　Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　No appearance for Plaintiff and Respondent.

William Edward Shack appeals from the judgment entered following his pleas of guilty to having a concealed firearm in a vehicle (Pen. Code, § 25400, subd. (a)(1))[1] and carrying an unregistered, loaded handgun (§ 25850, subd. (a)). The trial court suspended imposition of sentence and placed Shack on three years formal probation, one condition of which was that he serve 180 days in county jail. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

At approximately 10:45 a.m. on January 7, 2012, Los Angeles Police Officer Paris Archundia and her partner, Officer Juan Guerrero, were on patrol in a marked patrol car on Main Street in the City of Los Angeles. Guerrero was driving the car and Archundia was riding as the passenger. As the officers approached 69th Street, they noticed a brown Chevrolet Impala being driven with no front license plate in violation of Vehicle Code section 5200, subdivision (a). Archundia and Guerrero decided to conduct a traffic stop and Guerrero activated the patrol car's lights and siren.

While Archundia and Guerrero were still in their patrol car, Shack, who was driving, stopped the Impala in front of a Winchell's donut shop and "immediately" got out. As Guerrero got out of the patrol car, Shack began to walk toward him. Although he seemed "[a] bit flustered" and a "little nervous," Shack asked " 'What did I do, officer?' " Guerrero ordered Shack to "stop walking" and to "put his hands on top of his head." Shack was cooperative and complied with the officer's order. Guerrero asked Shack if "he [had] anything he should not have on him" and Shack indicated that he had two bags of marijuana in his front pants pocket.[3] Guerrero retrieved the marijuana,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The facts have been taken from the transcripts of the preliminary hearing and the motion to suppress evidence.

[3] It was later determined that the two baggies contained a total of 1.55 "gross grams" of a substance containing marijuana.

conducted a pat-down search for weapons, handcuffed Shack, placed him under arrest and sat him in the back seat of the patrol car.

In the meantime, Archundia approached the passenger who was seated in the front passenger seat of Shack's car. The passenger identified himself as Reed, but could not produce any identification. Because he had no identification, Archundia asked Reed to get out of the car. Reed did so and Archundia then asked him if he was on probation or parole. Reed indicated he was on parole and, after one of the officers confirmed that Reed was on parole and had "search[] conditions," Archundia searched Reed, handcuffed him and placed him in the back of the patrol car with Shack.

While Archundia watched the two suspects, Officer Guerrero searched Shack's vehicle for "more narcotics." Instead, the officer found a loaded "black semi-automatic handgun" in "the passenger pocket" behind the passenger seat. The "pocket" was approximately two feet from the right edge of the driver's seat. The gun appeared to be in working order.

After placing the handgun in the trunk of the patrol car, Guerrero read to Shack his *Miranda*[4] rights, which Shack agreed to waive. Shack then told Guerrero that the gun "belonged to him."

The officers transported Shack and Reed to the police station, where Guerrero had Shack fill out an "L.A.P.D. Investigative Action/Statement Form." In the statement, Shack indicated that he had picked up Reed and the two men had been going to get something to eat when they were stopped by the officers. Shack also wrote that "the gun belonged to him."

2. *Procedural history*.

A preliminary hearing was held on February 3, 2012. On February 17, 2012, an information was filed in which Shack was charged in count 1 with "having a concealed firearm in a vehicle, in violation of . . . section 25400[, subdivision] (a)(1), a Felony" and

---

**4**      *Miranda v. Arizona* (1966) 384 U.S. 436.

3

in count 2 with "carrying [a] loaded handgun, [which was] not registered, in violation of . . . section 25850[, subdivision] (a), a Felony[.]"  Shack entered pleas of not guilty to both counts.

On June 28, 2012, Shack's counsel made a motion to suppress evidence pursuant to section 1538.5.  The matter was continued and the motion was set to be heard on August 2, 2012.

Evidence with regard to Shack's motion to suppress evidence was heard at proceedings held on August 2, 2012 and October 4, 2012.  At the October 4th hearing, Shack's counsel argued that, although Reed had waived his Fourth Amendment rights by being on parole, Reed's consent to being searched had not transferred to Shack.  Relying on a California appellate court case which had been reversed by the California Supreme Court and in which a petition for certiorari is currently pending before the United States Supreme Court,[5] Shack's counsel argued that Shack's "parolee passenger never gained or exercised any apparent authority over the vehicle that might have given police officers the reasonable impression he had the right to permit its inspection.  The officer could not search the interior of the vehicle based upon the passenger's parole status and there was no other justification for the warrantless search."  After the prosecutor indicated that defense counsel was not relying on "citable authority," he argued that the gun in this case was found in the pocket on the back of the front passenger's seat and that it was not "impossible for [the] parolee to actually have access to it."  In addition, the prosecutor indicated that he did not agree with defense counsel's assertion that the officers had not found on Shack a sufficient amount of marijuana to justify their search of the car.

After considering the parties' arguments, the trial court stated that it appeared to the court that the appellate court case limiting a police officer's ability to search a parolee and his or her surroundings was "contrary to the general body of law [regarding] the

---

[5]  See *People v. Schmitz*, review granted and ordered depublished December 1, 2010, S186707, reversed by *People v. Schmitz* (2012) 55 Cal.4th 909, petition for certiorari filed at No. 12-1176, March 25, 2013.

scope of parole searches." The court continued: "If [one] can go into a home where a parolee is visiting and search the common area[s] of the home, . . . it does not follow . . . that the police did not have the right to search within reasonable parameters the area of the vehicle which was available to the parolee," including "the pocket behind the passenger seat. . . . I think this is different than if [the gun] were in the trunk of the vehicle" or "some briefcase belonging to the driver of the car." The trial court concluded that, pursuant to the prevailing law pertaining to parole searches, the officers "had the right to search the compartment behind the passenger seat." Accordingly, the trial court denied Shack's counsel's motion to suppress the evidence of the gun and Shack's statements admitting that the gun belonged to him.

At the same proceedings, the prosecutor indicated that, although he had no prior felony convictions, it had been documented that Shack was a member of the Raymond Avenue Crip gang. Under those circumstances, the prosecutor's "office policy [was to seek a sentence of the] low term [in] state prison." The prosecutor indicated that it had been documented that Shack had "self-admitted" gang membership to officers on three separate occasions. Defense counsel responded that, when one lives in a particular area, he or she may "get labeled . . . as being a gang member even when [they are] not." Counsel indicated that Shack had "absolutely never been involved in a gang" and requested that the trial court consider the charges misdemeanors. Although the parties then agreed that there would be "no gang allegation" and no evidence of gang affiliation at trial, the trial court nevertheless indicated that it was "not going to reduce carrying a concealed unregistered firearm to a misdemeanor." The trial court stated that it felt "very strongly about that."

On October 12, 2012, the trial court indicated the parties had come to an agreement and that Shack would be entering a plea. After the prosecutor asked Shack if he understood the charges against him and that the maximum sentence he could receive in this matter was three years in county jail, Shack stated he understood that he was accepting the trial court's offer of an "open plea" and that, under the terms of such a plea,

5

he would be placed on three years formal probation and ordered to serve 180 days in county jail. In addition, the trial court would consider reducing the charges to misdemeanors after one year of probation if Shack had "no new violations—no violations of the terms of [his] probation."

Shack waived his right to a trial by court or jury, his right to present a defense and to subpoena, at no cost to him, witnesses to testify on his behalf, his right to confront and cross-examine the witnesses against him and his privilege against self-incrimination. He then entered a plea of "guilty" to the "charge in count 1, that on or about January 7th, 2012, [he] committed the crime of having a concealed firearm in a vehicle, in violation of . . . section 25400[, subdivision] (a)(1), a felony[.]" Shack then admitted "that the firearm and unexpended ammunition were in [his] immediate possession and were readily accessible to [him], and the firearm was not registered to [him]." With regard to count 2, "the charge that on or about January 7th, 2012, [he] committed the crime of carrying a loaded handgun[,] not registered, in violation of . . . section 25850[, subdivision] (a)," Shack again entered a plea of "guilty." Shack's counsel "join[ed] in the plea[s], waivers and admissions[] and stipulate[d] to a factual basis [for the pleas] based upon the police reports and the preliminary hearing transcript."

The trial court found that Shack had "knowingly, intelligently [and] understandingly waived his constitutional rights[] and that his plea [had been] freely [and] voluntarily made with an understanding of the nature and the consequences thereof." In addition, the court found that there was a "factual basis for the plea." The trial court accepted Shack's plea, suspended imposition of sentence, then placed Shack on formal probation for a period of three years. As one condition of probation, Shack was to serve 180 days in county jail. The trial court ordered Shack to surrender on November 8, 2012 and informed him that if he did not do so, the court could impose a prison term of up to the maximum time allowed.

The trial court awarded Shack presentence custody credit for six days actually served and six days of good time/work time, or 12 days. It then ordered Shack to pay a

$240 restitution fine (§ 1202.4, subd. (b)), a suspended $240 probation revocation restitution fine (§ 1202.44), a $30 criminal conviction fee (Gov. Code, § 70373) and a $40 court security fee (§ 1465.8, subd. (a)(1)).

As ordered, Shack surrendered to the court on November 8, 2012. He filed a timely notice of appeal that same day. In his notice of appeal, Shack indicated that the appeal was "based upon the denial of a motion to suppress evidence made pursuant to . . . section 1538.5."

## CONTENTIONS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.

By notice filed March 4, 2013, the clerk of this court advised Shack to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. No response has been received to date.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.

We concur:


KLEIN, P. J.                         CROSKEY, J.

7