Filed 2/28/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br>v.<br><br>ALEJANDRO MANUEL DELRIO,<br><br>     Defendant and Appellant. | A154848<br><br>(San Mateo County<br>Super. Ct. No. SF394912) |

This case arises out of a warrantless search of the contents of a cell phone belonging to defendant Alejandro Manuel Delrio. At the time of the search, defendant was a convicted felon in the legal custody of the California Department of Corrections and Rehabilitation (CDCR) as he served out the remainder of his term on parole. As a parolee, defendant was subject to a statutorily mandated parole term that required him to submit to warrantless and suspicionless searches of his person, his residence, and any property under his control by a parole officer or other peace officer at any time. At the time of the cell phone search, police officers knew defendant was on parole and had specific, articulable reasons to suspect he was involved in a residential burglary.

Defendant pleaded guilty to first degree burglary after the trial court denied his motion to suppress evidence obtained from the search of his cell phone. On appeal, defendant claims the search violated his Fourth Amendment rights because his written parole conditions gave him a

reasonable expectation of privacy in the contents of his cell phone. We conclude that any expectation of privacy defendant may have had did not outweigh the government's interest in conducting the search because the officers had specific reasons to suspect he was involved in a residential burglary. The judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2014, a residential burglary was committed in Redwood City. A surveillance video from a neighbor's house showed two individuals walking from a black truck to the burglarized house and then walking away, each carrying a sack. After the residents of the home reported the burglary, Sheriff's Deputy Robert Willett contacted defendant and told him that a vehicle registered to him had been involved in a burglary. Defendant denied any involvement, told the deputy that he had loaned the truck to a coworker, and further claimed that if the truck was involved with a burglary, it must have been used without his permission. Defendant then completed paperwork to report the vehicle stolen.

Deputy Willett then viewed the surveillance video and concluded that one of the two individuals shown in the video had "a very close resemblance to the defendant." Thus, Willett recommended that defendant be re-contacted as a suspect.

Sergeant Hector Acosta conducted a records check on defendant and determined that he was on active parole. At around 10:30 a.m. on September 26, 2014, Acosta and several officers went to defendant's house to conduct a parole search. While the officers searched the house, Acosta interviewed defendant and his girlfriend. Acosta showed defendant a still photo from the surveillance footage and said one of the suspects looked like him, but defendant denied involvement in the burglary. During the search of the

2

house, officers located a cell phone that belonged to defendant. Acosta later testified at the suppression hearing that he believed defendant's parole obligations required him to surrender his password, and Acosta may have told defendant, " 'you're on parole. I need the passcode[,]' " or "give me your passcode." Defendant complied, and Acosta gave the cell phone to a detective who used a Cellebrite device to download the contents of the phone before returning it to defendant.

A few minutes after the officers left his house, defendant called Sergeant Acosta and asked him to return to the house. Upon the officers' return, defendant showed Acosta a photograph from his cell phone in which defendant was holding five $100 bills. Defendant said the money was the proceeds from selling the stolen jewelry from the burglary. Defendant also told Acosta about his involvement in the burglary and said he should not have reported his vehicle stolen.

Defendant was charged by information with first degree burglary (Pen. Code, § 460, subd. (a); count one); grand theft (*id*., § 487, subd. (a); count two); perjury (*id*., § 118, subd. (a); count three); and making a false report of a criminal offense (*id*., § 148.5, subd. (a); count four). As to count one, the information alleged a number of sentencing enhancements.

Defendant moved to suppress the evidence obtained from the cell phone search and all statements made by him as fruit of that search. The trial court denied the motion. Defendant then pleaded guilty to count one and admitted enhancements for being on parole after imprisonment for a prior serious or violent felony (Pen. Code, § 1203.085, subd. (b)); commission of a prior serious felony while on parole (*id*., § 1203.085, subd. (b)); having a prior strike (*id*., §§ 667, subds. (a)1), 1170.12, subd. (c)(1)); and having a prior serious felony conviction (*id*., § 667, subd. (a)(1)). The trial court sentenced

3

defendant to seven years in state prison. Defendant appealed from the judgment based on the trial court's allegedly erroneous denial of his motion suppress (*id.*, § 1538.5, subd. (m)).

## DISCUSSION

"Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards." (*People v. Schmitz* (2012) 55 Cal.4th 909, 916 (*Schmitz*).) "The 'touchstone of the Fourth Amendment is reasonableness,' " which "is measured in objective terms by examining the totality of the circumstances." (*Ohio v. Robinette* (1996) 519 U.S. 33, 39.) In determining reasonableness, courts assess the degree to which the search "intrudes upon an individual's privacy," as well as "the degree to which it is needed for the promotion of legitimate governmental interests." (*United States v. Knights* (2001) 534 U.S. 112, 118–119 (*Knights*).)

A warrantless search is per se unreasonable under the Fourth Amendment absent a recognized exception. (U.S. Const., 4th Amend.; *Katz v. United States* (1967) 389 U.S. 347, 357.) Both the United States Supreme Court and the California Supreme Court recognize that a parole search conducted pursuant to California Penal Code section 3067, subdivision (b)(3), constitutes one of those exceptions. (*Samson v. California* (2006) 547 U.S. 843 (*Samson*); *Schmitz, supra*, 55 Cal.4th at p. 916.) Under that statute, "every inmate eligible for release on parole 'is subject to search or seizure by a . . . parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause.' " (*Schmitz*, at p. 916.) Upon release from incarceration, parolees are notified: "You and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections [and

4

Rehabilitation] or any law enforcement officer." (Cal. Code Regs., tit. 15, § 2511, subd. (b)4.) Because such searches are mandated as a term of every parolee's release, "an officer's knowledge of a parolee's status is equivalent to knowledge of the applicable search condition." (*Schmitz*, at p. 922, fn. 13, citing *People v. Middleton* (2005) 131 Cal.App.4th 732, 739–740.) As the California Supreme Court has emphasized, "[w]arrantless, suspicionless searches are a vital part of effective parole supervision" in California. (*Schmitz*, at p. 924; accord, *Samson*, *supra*, at p. 854.)

In examining whether a warrantless search of a parolee's cell phone is constitutionally valid, we find it helpful to review the analysis of the United States Supreme Court in *Samson*, *supra*, 547 U.S. 843, which preceded the California Supreme Court's decision in *Schmitz*, *supra*, 55 Cal.4th 909. In *Samson*, the issue was whether the warrantless and suspicionless search of a parolee's person was reasonable within the meaning of the Fourth Amendment. In analyzing that issue, *Samson* looked to the totality of circumstances and weighed the privacy expectations of parolees against the interests of the government in conducting such searches. (*Samson*, at pp. 848–857.)

*Samson* deemed it significant that California parolees, like parolees elsewhere, "have severely diminished expectations of privacy by virtue of their status alone" (*Samson*, *supra*, 547 U.S. at p. 852)—even below that of individuals on probation—because "parole is more akin to imprisonment than probation is to imprisonment" (*id*. at p. 850). That is, "an inmate-turned-parolee remains in the legal custody of the California Department of Corrections through the remainder of his term . . . and must comply with all of the terms and conditions of parole" (*id*. at p. 851), including the term permitting warrantless and suspicionless searches at any time (Pen. Code,

5

§ 3067, subds. (a), (b)(3)). *Samson* noted the additional circumstance that when the petitioner there signed the order submitting to the parole search term, he "thus was 'unambiguously' aware of it." (*Samson*, at p. 852.) "Examining the totality of circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' [citation], including the plain terms of the parole search condition," *Samson* concluded the "petitioner did not have an expectation of privacy that society would recognize as legitimate." (*Id.* at p. 852, fn. omitted.)

Samson then turned to the governmental interests at stake. *Samson* began by noting the Supreme Court's repeated acknowledgement that the government's interest in supervising parolees is " ' "overwhelming" ' " because parolees " 'are more likely to commit future criminal offenses.' " (*Samson*, *supra*, 547 U.S. at p. 853.) *Samson* similarly relied on the high court's repeated acknowledgment that the governmental interests "in reducing recidivism, and thereby promoting reintegration and positive citizenship among probationers and parolees, warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." (*Samson*, at p. 853.) *Samson* then considered empirical evidence regarding California recidivism rates among parolees and the "grave safety concerns that attend recidivism." (*Id.* at pp. 853–854.) Recognizing that "the Fourth Amendment does not render the States powerless to address [such public safety] concerns *effectively*," *Samson* determined that "California's ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society." (*Id.* at p. 854.)

Because the totality of the circumstances supported the reasonableness of the warrantless and suspicionless parole search, *Samson* concluded there

6

was no Fourth Amendment violation. (*Samson*, *supra*, 547 U.S. at p. 857.) In *Schmitz*, *supra*, 55 Cal.4th 909, the California Supreme Court likewise applied a totality of the-circumstances approach in concluding that three warrantless parole-based searches of items within a car belonging to and being driven by the defendant, in which the only parolee in the car was the front seat passenger, were reasonable under the Fourth Amendment because the searched items were within those areas of the vehicle where the officer reasonably expected that the parolee could have stowed or discarded personal belongings. (*Schmitz*, at pp. 921–922, 926.)

Although parole searches are generally exempt from the warrant requirement, case law recognizes that parolees nonetheless retain a reduced expectation of privacy and are not completely bereft of Fourth Amendment protection. (*People v. Sanders* (2003) 31 Cal.4th 318, 332; *In re Jaime P.* (2006) 40 Cal.4th 128, 137; accord, *United States v. Grandberry* (9th Cir. 2013) 730 F.3d 968, 975.) Thus, a parole search may still violate the Fourth Amendment if it is "arbitrary, capricious or harassing" (*People v. Reyes* (1998) 19 Cal.4th 743, 752 (*Reyes*); accord, *Samson*, *supra*, 547 U.S. at p. 856), such as when a search is "made too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer" (*Reyes*, at pp. 753–754).

In the instant matter, there is no dispute that defendant was on parole at the time his cell phone was seized and its contents downloaded, or that the officers involved were aware of defendant's parolee status at the time of the seizure. Defendant's argument on appeal is that he nevertheless maintained a reasonable expectation of privacy in his cell phone and its contents because of certain language in the form used by the CDCR to notify him of his parole conditions. Specifically, defendant argues that because the CDCR form did

7

not have boxes checked for certain so-called "special conditions of parole" that would have required him to give his consent to, and any passwords for, searches of his electronic devices, he was not provided clear and unambiguous notice that his cell phone was subject to a parole search.

Defendant cites no case in which a search or seizure of a parolee's cell phone was invalidated under the Fourth Amendment, and our research has disclosed none. Federal courts have unanimously upheld such searches. (See *Petersen v. Buyard* (E.D.Cal. Oct. 3, 2019, No. 1:19-cv-00235-DAD-EPG) 2019 U.S. Dist. Lexis 173026, at *14–18; *United States v. Pacheco* (10th Cir. 2018) 884 F.3d 1031, 1040–1041; *United States v. Jackson* (8th Cir. 2017) 866 F.3d 982, 984–986; *United States v. Johnson* (9th Cir. 2017) 875 F.3d 1265, 1273–1276 (*Johnson*); *United States. v. Luna* (9th Cir. 2015) 602 Fed. Appx. 363, 365; *United States v. Farley* (N.D.Cal. Nov. 9, 2015, No. 15-cr-00092-TEH) 2015 U.S. Dist. Lexis 152631, at *33–35; *United States v. Johnson* (11th Cir. 2014) 579 Fed. Appx. 920, 924–927; *United States v. Martinez* (N.D.Cal. Aug. 12, 2014, No. CR 13-00794 WHA) 2014 U.S. Dist. Lexis 112347.)[1] The issue presented here is whether the unchecked boxes on defendant's CDCR form, standing alone, is a circumstance warranting a break with this clear trend.

The terms and conditions of defendant's parole release were set forth in a form used by the CDCR entitled "Notice and Conditions of Parole."[2] On its first page, the form contains a general term modeled after Penal Code section 3067, subdivision (b)(3), and California Code of Regulations, title 15,

[1]    "Unpublished federal cases are not binding authority but they may be cited as persuasive." (*Hall v. Goodwill Industries of Southern California* (2011) 193 Cal.App.4th 718, 727, fn. 2.)

[2]    The form has a revision date of April 2013.

section 2511, subdivision (b)4, which states: "You, your residence, and any property under your control are subject to search or seizure by a probation officer, an agent or officer of the California Department of Corrections and Rehabilitation, or any other peace officer, at any time of the day or night, with or without a search warrant, with or without cause." In subsequent pages, the form lists various special conditions with boxes to check and a space for the parolee to initial.

In defendant's case, the boxes that were checked off and initialed prohibited his use and possession of alcohol and narcotics, contact with the victim, association with co-defendants, and gang-related activity. No boxes were checked in the section titled "Computer Use and Electronic Media." Condition 90 of this section states: "You shall not use any method to hide or prevent unauthorized users from viewing specific data or files; e.g., encryption, cryptography, steganography, compression, password protected files. Log in and password information shall be provided to your parole agent upon request." Condition 92 states: "You shall consent to announced or unannounced examination and/or search of electronic devices to which you have access for the limited purpose of detecting content prohibited by your conditions of parole or court order; e.g., hard disks, zip disks, floppy diskettes, CD ROMs, optical disks, thumb drives, magnetic tape, and/or any other storage media whether installed within a device or removable and separate from the actual computer device." Defendant argues that because these boxes were not checked, the form must be understood as excluding searches of his cell phone.

The People respond that the failure to check off conditions 90 and 92 is of no consequence because those paragraphs relate only to computers, not cell phones. On this point, we disagree. Most modern cell phones—including

9

those available at the time of the September 2014 search here—are "minicomputers" (see *Riley v. California* (2014) 573 U.S. 373, 393 (*Riley*)) with many of the same capabilities commonly associated with computers, particularly in the areas targeted by the parole conditions relating to electronic media use (i.e., email, instant messaging, viewing sexually explicit materials or materials related to the parolee's crime).  Furthermore, by their terms, conditions 90 and 92 apply to any "electronic devices" capable of storing, accessing, and password-protecting digital "data."  This reasonably includes cell phones.

Defendant argues that an option to impose special conditions 90 and 92 would be unnecessary if the general search term pertaining to "any property under your control" already encompasses searches of a parolee's cell phone.  Thus, defendant contends the CDCR form, considered as a whole, implies that searches of electronic devices are specifically covered by other paragraphs that were not selected in his case.  The People notably fail to respond to this argument.  Nevertheless, we conclude the failure to select such conditions in the CDCR form neither restricts reasonable searches and seizures nor necessarily gives rise to a privacy interest in the areas covered by the condition.

Conditions 90 and 92 are but two of 106 special conditions listed in the CDCR form that, if selected, either require or forbid certain conduct by a parolee.  Such conditions, however, do not appear intended to set restrictions on the searches and seizures authorized by Penal Code section 3067, subdivision (b)(3), or to elevate a parolee's expectations of privacy.  For instance, condition 46 states that a parolee shall not view, possess, or have access to any material depicting children in undergarments, nude, or partially nude, etc., and conditions 93 and 94 prohibit a parolee's use of

10

electronic media to view any and all sexually explicit content. When such special conditions *are* selected, the parolee's failure to adhere may give rise to parole violation charges, but when they are *not* selected, it does not inevitably follow that a parolee thereby enjoys a privacy right in such materials.[3]

At best, defendant identifies an ambiguity in the CDCR form as to the interplay between the general search term and the special electronic device conditions that remain unselected in a given case. But the question remains: what is the effect of the perceived ambiguity on the reasonableness of a parole search conducted under the auspices of a *statutorily-imposed* search condition? Relying on *Samson*, *supra*, 547 U.S. 843, defendant argues the above circumstance is sufficient to tilt the Fourth Amendment balance in favor of his privacy rights. In *Samson*, the high court determined that the petitioner's acceptance of a " 'clearly expressed' " suspicionless parole search condition was one of the circumstances that significantly diminished the petitioner's reasonable expectation of privacy. (*Samson*, at p. 852; see also *Knights*, *supra*, 534 U.S. at p. 120.) Pushing off from that portion of *Samson*'s analysis, defendant argues that an *unclear* and *ambiguous* cell phone search condition, such as the one here, has no similar effect.

Although there is some surface appeal to defendant's argument, it ultimately falls short. As the California Supreme Court emphasized in *Schmitz*, Penal Code section 3067, subdivision (b)(3), provides that "every parolee is subject to warrantless and suspicionless parole searches," and the reasonable scope of a parole search is not "strictly tied to the literal wording of the notification given to the parolee upon release." (*Schmitz*, *supra*, 55 Cal.4th at p. 928.) Thus, while the reasonableness of a probation search

---

[3]    Notably, the record contains no evidence such as a declaration from defendant demonstrating his actual reliance on the unchecked boxes as an indication that cell phones were off limits to a parole search.

11

has been held dependent on the literal wording of the notification given to a probationer, the reasonableness of a parole search does not derive from a theory of consent as has been found in probation search cases, but rather, is assessed based on the totality of the circumstances. (*Id.* at pp. 928–929.) Moreover, as *Schmitz* recognizes, officers are only required to know of an individual's parole status in order to conduct a parole search. (*Id.* at p. 922, fn. 13.) Significantly, this means the officers who performed the parole search of defendant were not required to first ascertain and parse the language of the CDCR form, as defendant insists we do here.[4] Thus, although the CDCR form issued to defendant may have lacked clarity with respect to searches of his electronic devices, that single circumstance is not dispositive of the Fourth Amendment challenge but is merely one of several to consider in the totality of circumstances.

Defendant also draws our attention to the United States Supreme Court's landmark decision in *Riley*, *supra*, 573 U.S. 373, as "another powerful reason to find that the exclusion of electronic device and password conditions from defendant's search condition has *constitutional* significance." In *Riley*, the high court held that a law enforcement officer may not conduct a warrantless search of a person's cell phone under the exception to the warrant requirement for searches incident to arrest. In so holding, *Riley* observed that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on arrestee's person. The term

---

[4]    By contrast, in the case of probationers, "[a] search condition is not mandated by statute for every probationer, and probation search clauses are not worded uniformly. . . . Thus, the officer must have some knowledge not just of the fact someone is on probation, but of the existence of a search clause broad enough to justify the search at issue." (*People v. Douglas* (2015) 240 Cal.App.4th 855, 863.)

12

'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." (*Riley*, at p. 393.) The court noted, in particular, the "immense storage capacity" of cell phones, their ability to collect many distinct types of information in once place, and the pervasiveness of cell phone use in everyday life. (*Id.* at pp. 394–395.) The court further noted the qualitative differences of cell phone records from other physical records, including the user's Internet search browsing history or location information. (*Id.* at pp. 395–396.) In light of these unique characteristics, the court held, "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse. A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but any extension of that reasoning to digital data has to rest on its own bottom." (*Id.* at p. 393.)

As the People point out, *Riley* is distinguishable because it involved a different exception to the warrant requirement (search incident to arrest), as well as different governmental interests (preventing harm to officers and destruction of evidence) than those promoted by the parole search exception. (See *Riley*, *supra*, 573 U.S. at p. 386.) We are aware of no court that has applied *Riley*'s holding to parole searches, and as indicated, federal decisions have thus far upheld warrantless searches of parolee cell phones. Although the United States Court of Appeals for the Ninth Circuit has applied some of *Riley*'s reasoning in a *probation* search case (*United States v. Lara* (9th Cir. 2016) 815 F.3d 605 (*Lara*)), it declined to do so in a subsequent *parole* search

13

case on the ground that the defendant's "parole status alone" distinguished the case from *Lara* and *Riley*. (*Johnson*, *supra*, 875 F.3d at p. 1275.) That said, we acknowledge that *Riley* made important observations about the unprecedented privacy concerns presented by modern cell phones which, along with the high court's later decision in *Carpenter v. United States* (2018) 138 S.Ct. 2206 (*Carpenter*),[5] support the "general argument that the Supreme Court has recently granted heightened protection to cell phone data." (*United States v. Wanjiku* (7th Cir. 2019) 919 F.3d 472, 484; see also *United States v. Rogers* (N.D.Ind. Dec. 4, 2019, No. 1:18-CR-103-HAB) 2019 U.S. Dist. Lexis 210247, *7 ["It is certainly possible to read *Riley*, a case also decided in the context of an individual who was subject to a lesser expectation of privacy and come away with the conclusion that a warrant may be necessary for the search of a cell phone in all but those cases in which exigent circumstances exist."].)

With these considerations in mind, we will assume, for the sake of argument, that where, as here, the scope of a parole search condition form lacks clarity with regard to cell phones, the parolee may have some reasonable expectation of privacy in his or her cell phone and its data. Nonetheless, as with any warrantless search, the reasonableness of the challenged parole search here depends on the totality of circumstances. Because a parolee remains in the legal custody of the CDCR (*Samson*, *supra*, 547 U.S. at p. 851; *People v. Smith* (2009) 172 Cal.App.4th 1354, 1361), he or she cannot reasonably expect to be free of warrantless cell phone searches under all circumstances, and any intrusion on this assumed privacy interest

---

[5]     *Carpenter* held that the government's access of historical cell phone records that chronicle a user's past movements is a search under the Fourth Amendment. (*Carpenter*, *supra*, 138 S.Ct. at p. 2211.)

14

must still be balanced against the degree to which the search promotes legitimate governmental interests. (*Schmitz*, *supra*, 55 Cal.4th at p. 921.)

As discussed, California has an "overwhelming" interest in supervising parolees in order to detect possible parole violations, reduce recidivism, and promote reintegration of parolees into society. (*Samson*, *supra*, 547 U.S. at p. 853.) The government also "has a duty not only to assess the efficacy of its rehabilitative efforts but to protect the public, and the importance of the latter interest justifies the imposition of a warrantless search condition." (*Reyes*, *supra*, 19 Cal.4th at p. 752.) Furthermore, the strength of the governmental interest in conducting a probation or parole search " 'varies depending on the degree to which the government has a specific reason to suspect that a particular probationer [or parolee] is reoffending or otherwise jeopardizing his [or her] reintegration into the community.' " (*Lara*, *supra*, 815 F.3d at p. 612.)

In the instant case, the officers knew defendant was a parolee and they had specific, articulable reasons to suspect he was involved in a residential burglary and was therefore reoffending. The video surveillance evidence showed that the burglary involved defendant's truck and two individuals, one of whom bore a "very close resemblance" to defendant. Under these circumstances, the government had a particularly acute interest in determining whether defendant had violated the conditions of his parole and was a danger to the public. (Cf. *Lara*, *supra*, 815 F.3d at p. 612 [government's interest in searching probationer who merely missed probation meeting was "worlds away" from searching probationer suspected of violent crime].) And it was reasonable for the investigating officers to believe there might be evidence of the burglary on defendant's cell phone, such as text messages or calls with his accomplice, or photographs or location information

15

regarding the targeted residence. Thus, despite any perceived expectation of privacy that defendant may have had in his cell phone due to the lack of clarity in the written search conditions, consideration of the totality of the circumstances presented leads us to conclude that the balance ultimately tilts in favor of the government's substantial interests in supervising defendant and protecting the public.

Finally, we observe the cell phone search was not arbitrary, capricious, or harassing. (*Reyes*, *supra*, 19 Cal.4th at p. 752.) A search is arbitrary and capricious when the motivation for the search is unrelated to rehabilitative, reformative, or legitimate law enforcement purposes, or when the search is motivated by personal animosity toward the parolee. (*In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1004.) Because the officers here had specific reasons to suspect that defendant was involved in a residential burglary, the search was related to legitimate parole monitoring and law enforcement purposes, and there was no evidence suggesting the officers had personal animosity towards defendant. The search took place at a reasonable hour and was not unreasonably prolonged. (*Reyes*, at pp. 753–754.)[6]

---

[6]     We note *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*) recently held that a *probation* search condition allowing for warrantless electronic device searches was invalid under the test of *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*). In this case, defendant has never contended that the *Lent* test—which judicially interprets the requirement of Penal Code section 1203.1, subdivision (j), that "*probation* conditions be 'reasonable' " (*Ricardo P.*, at p. 1128, italics added)—applies to parole searches, or that, if the *Lent* analysis were applied in the parolee context, the record here would be adequate to show an abuse of discretion under *Lent*'s three conjunctive prongs (*Lent*, at p. 486 [condition (1) has no relationship to crime of which offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality]).

## DISPOSITION

The judgment is affirmed.

_____

Fujisaki, J.


WE CONCUR:


_____

Siggins, P. J.


_____

Jackson, J.


A154848

People v. Delrio

(A154848)

Trial court: San Mateo County

Trial Judge: Hon. Donald J. Ayoob

Attorneys:

John Alexander Halley for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Ronald E. Niver, Deputy Attorney General and Bruce Ortega, Deputy Attorney General for Plaintiff and Respondent.