Filed 10/19/21  P. v. Lind CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091348 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE007388) |
| v. | |
| CALEB RAY LIND, | |
| Defendant and Appellant. | |

Sheriff's deputies searched a backpack found inside the car in which defendant Caleb Ray Lind was a passenger.  The deputies discovered two guns and ammunition. After his motion to suppress the guns and ammunition and subsequent Penal Code section 995 motion were denied, defendant pled no contest to two counts of carrying a concealed firearm in a vehicle.  On appeal, defendant contends the search of the backpack was illegal.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2019, Sacramento County Sheriff's Deputy Ryan Trapani and his partner deputy Garth Keffer initiated a traffic stop of the car in which defendant was a

1

front seat passenger. The driver of the car was on probation so the deputies conducted a probation search of the car, which included a backpack they found at defendant's feet. Inside the backpack, the deputies found two loaded guns and a loaded magazine.

The People charged defendant with two counts of carrying a concealed firearm in a vehicle. Defendant filed a motion to suppress. On August 14, 2019, the magistrate held a hearing on the motion along with the preliminary hearing.

Sheriff's Deputies Ryan Trapani and Garth Keffer testified at the hearing. The deputies testified they were driving on a public road in an unmarked patrol car when they observed a car with a cracked windshield traveling opposite them. Because a cracked windshield is a violation of the Vehicle Code, they "turned around to initiate a vehicle stop." As the deputies approached the car, however, the car picked up speed and drove "down some side streets." Based on the increase in speed and the number of turns the car made, Deputy Trapani believed the person driving the car was trying to evade them.

When the car did stop, it stopped quickly, which Deputy Trapani interpreted to mean the driver "was stopping to park his vehicle and not be stopped by us; hopefully not seen, as in hopefully we didn't see them stop so in an effort to evade, basically." At that point, Deputy Trapani turned on the patrol car's overhead lights and dashboard camera; they did not activate a siren.

Wearing a "modified uniform with a tactical vest that has police written on the front and back," Deputy Trapani got out of the patrol vehicle and approached the driver's side of the other car. He immediately recognized the driver of the car to be a "known probationary gang member" of the East Side Piru street gang (Piru gang). Deputy Trapani noted they were in Piru gang territory and the driver was wearing a red sweater, the color associated with the Piru gang. Deputy Trapani also noted a red backpack on the front passenger floorboard, between defendant's feet. He observed the backpack was within the driver's reach and it was positioned with the top facing up but zipped closed.

Deputy Trapani removed the driver from the vehicle, searched his person, handcuffed him, and placed him in the back of the patrol vehicle in order to conduct a probation search of the car he was driving. Defendant was seated in the front passenger seat. Deputy Keffer removed defendant from the car, patted him down, and had him sit on the car's front bumper while they searched the car.

Deputy Trapani grabbed the backpack out of the car. Defendant, who was not on probation, appeared nervous: he was watching Trapani "intently" and his hands were trembling. He told Trapani the backpack was his and Trapani could not search it. Nevertheless, because the backpack had been within the driver's reach and the driver was on probation, Trapani continued with the search. He said it was "a common thing for people without search status" to claim ownership of something to prevent it from being searched.

Trapani also believed the backpack belonged to the driver because the backpack was red, consistent with the driver's membership in the Piru gang. Moreover, he knew the driver had a history of gun charges. Based on that information, Trapani believed there may be a gun in the backpack. Inside the backpack, Trapani found two firearms and a loaded magazine.

The magistrate denied defendant's motion to suppress. Defendant filed a motion to dismiss with the trial court, arguing the search of the backpack was illegal. The trial court denied the motion.

Defendant subsequently pled no contest to both counts. In exchange for the plea, the court indicated its intent to grant probation and, if defendant successfully completed two years of probation, the court would reduce the charges to misdemeanors. Accordingly, the court suspended imposition of judgment and placed defendant on probation for five years, ordering him to serve 90 days in county jail as one of the conditions of probation. The court also ordered defendant to pay various fines and fees.

3

## DISCUSSION

Defendant contends there was no probable cause to support a warrantless search of the backpack found at his feet because the search exceeded the scope of a lawful probation search. We disagree.

Where a motion to suppress is submitted after the filing of an information, "the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, . . . and measuring the facts as found by the trier against the constitutional standard of reasonableness." (*People v. Thompson* (1990) 221 Cal.App.3d 923, 940.) In so doing, we defer to the magistrate's factual findings and, exercising our independent judgment, determine whether, "on the facts so found, the search or seizure was reasonable under the Fourth Amendment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.) Warrantless searches are presumed unreasonable, "subject only to a few specifically established and well-delineated exceptions." (*Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585]; see also *People v. Superior Court* (*Walker*) (2006) 143 Cal.App.4th 1183, 1196.) One of those exceptions is the search of probationers who have consented in advance to warrantless searches. (*People v. Woods* (1999) 21 Cal.4th 668, 674.)

In considering the permissible scope of a vehicle search based on an occupant's parole status, our Supreme Court has held that "the Constitution permits a search of those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity. Additionally, the officer may search personal property located in those areas if the officer reasonably believes that the parolee owns those items or has the ability to exert control over them." (*People v. Schmitz* (2012) 55 Cal.4th 909, 913.)

4

Here, following a traffic stop, Deputy Trapani recognized the driver of the car as a known member of the Piru gang and a probationer. Trapani also knew the driver had a history of gun charges. After securing the driver in the back of the patrol car, Trapani searched the car's passenger compartment and found a closed backpack sitting on the floorboard, between defendant's feet. The backpack was red, suggesting the owner may be a Piru gang member and was well within the driver's reach.

Defendant, who Deputy Trapani did not know, was acting nervous. Defendant claimed the backpack as his own but based on his experience, Trapani did not believe him and reasonably believed he was lying so the deputies could not search the backpack without a warrant. Under these circumstances, it would be reasonable for Deputy Trapani to believe the driver either owned the backpack at defendant's feet or, at a minimum, it was within the probationer's ability to exert control over the backpack.

Because our de novo review of the magistrate's decision to deny the motion to suppress has reached the same conclusion, the trial court did not err in denying defendant's 995 motion to set aside the information based on the illegality of the search.

DISPOSITION

The judgment is affirmed.


/s/_____
Robie, J.

We concur:


/s/_____
Blease, Acting P. J.


/s/_____
Duarte, J.

5