Filed 8/7/25  P. v. Judkins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D084856 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN456254) |
| JUSTIN EARL JUDKINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura E. Duffy, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Emily Reeves, Deputy Attorneys General, for Plaintiff and Respondent.

Justin Earl Judkins was convicted of unlawful possession of controlled substances for purposes of sale (Health & Saf. Code, § 11351; count 1) and giving false information to a peace officer (Pen. Code, § 148.9; count 2).  On

appeal, he claims his motion to suppress evidence was improperly denied. Specifically, he contends the search of his person and the car he was driving was unlawful because (1) his detention was unreasonably prolonged and (2) the search exceeded the scope of what is permitted following arrest. We conclude any delay in detention was reasonable given officer safety concerns, and considering the totality of the circumstances the trunk search did not exceed the scope of what is permitted following an arrest. Thus, we affirm.

I.

In May 2024, a police officer initiated a traffic stop after observing a car with expired registration and tinted windows in violation of the vehicle code. Judkins was driving, with passengers in the front and back passenger seats. The owner of the car sat in the front passenger seat. None of the occupants could provide any form of identification, so the officer requested backup.

Judkins told the officer his name was "Brandon Judkins," yet the officer found no records under that name. Upon searching "Judkins" alone, the officer found a photograph confirming Judkins' identity. Judkins' record revealed a felony warrant for a post release community supervision violation. It also confirmed Judkins was subject to a Fourth Amendment waiver.

The officer waited for backup, as "[he] was outnumbered at that point" and "didn't think it was safe to place [Judkins] under arrest by [him]self." This wait delayed the arrest "[a]bout ten minutes." Once the backup officer arrived, Judkins was handcuffed and searched. After finding no contraband on Judkins, the officer placed him under arrest for the felony warrant and for giving false information to a police officer.

The officers then asked the passengers to step out of the car and handcuffed them to search the car. The backseat passenger admitted to having a knife on him and gave consent to search his pockets. The officers

2

found a baggie of methamphetamine and a methamphetamine pipe in his underwear. One of the officers proceeded to search the car for "evidence of more potential drug possession and paraphernalia, which [the officer] believed [he] was going to find in the car." The grounds for the search were Judkins' felony warrant, his Fourth Amendment waiver, and the discovery of drugs and paraphernalia on the backseat passenger.

The officer found no evidence in the front area of the car or the backseat. When searching the backseat, he observed the sleeve of a jacket stuck in a "door that folds between the trunk of the vehicle and the rear seat." He explained this was "odd" and "looked as if somebody had just put something in the trunk from the back seat." The officer noted how "entry [to the trunk was] accessible from the cab of the car."

Upon searching the trunk, the officer discovered a leather bag containing a wallet with credit cards in Judkins' name, a large quantity of plastic baggies containing fentanyl and methamphetamine, and a digital scale with a white powdery substance on it. That evidence and a search of Judkins' phone indicated he possessed the drugs for the purpose of sale.

Judkins' motion to suppress the above evidence was denied. The jury found Judkins guilty of both charged counts. The court imposed a prison sentence of three years on count 1 and sentenced Judkins to 180 days for count 2, to run concurrently.

## II.

Judkins challenges the denial of his motion to suppress the evidence found in the car he had been driving.

In reviewing a trial court's ruling on a motion to suppress, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the

3

search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

"Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards." (*People v. Schmitz* (2012) 55 Cal.4th 909, 916.) "A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant." (*Ibid.*) "Probation and parole searches are among those exceptions." (*People v. Douglas* (2015) 240 Cal.App.4th 855, 860.) "[B]ecause of its similarity to parole, so is a search under a [post release community supervision] search condition." (*Ibid.*)

## A.

To start, Judkins contends his detention was unreasonably prolonged, as the officer's mission was "limited to investigating the reason for the stop." We disagree.

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns." (*Rodriguez v. United States* (2015) 575 U.S. 348, 354.) "If the driver cannot produce [a driver's] license, or satisfactory proof of identity, or the registration, then the officer may expand the scope of the detention, depending on the circumstances." (*People v. Valencia* (1993) 20 Cal.App.4th 906, 918.) If an officer receives "further information giving cause for suspicion concerning drug activity" after the initial stop, detention may reasonably be prolonged. (*People v. Russell* (2000) 81 Cal.App.4th 96, 102.)

Here, when the officer initiated the traffic stop, he promptly requested backup after none of the passengers were able to provide him with

4

identification. Because he was outnumbered, he felt the request was necessary for his own safety. When Judkins gave a false name to the officer, the length of his detention was expanded due to the officer's need for further investigation. Any delay caused by the officer's request for backup or time expended for a records check was reasonable given the officer's concern for his safety and his responsibility to confirm Judkins' identity.

Judkins asserts that once he was arrested for the felony warrant and for giving false information to a police officer, the officer had accomplished his mission and had no reason to prolong the stop to investigate the other occupants and search the car. Yet, as discussed below, the officers had authority to search the car pursuant to Judkins' Fourth Amendment waiver. Asking the passengers to exit the car was necessary to complete the mission, as was the search of the backseat passenger when he admitted to having a knife in his pocket. After searching the backseat passenger and discovering methamphetamine, the officer believed he would find evidence of potential drug possession and paraphernalia in the car, allowing the detention to be reasonably extended.

The evidence demonstrates that the officers were focused on completing the mission of the stop and attending to safety concerns. We thus conclude Judkins' detention was not unreasonably extended.

B.

Judkins also claims the trunk search exceeded the scope of what is permitted following an arrest. We, however, conclude the search did not exceed the scope due to Judkins' joint control of the car, his diminished expectation of privacy, and evidence suggesting drugs were secreted into the trunk.

"[P]articularized suspicion is not required in order to conduct a search based on a properly imposed search condition." (*People v. Reyes* (1998) 19 Cal.4th 743, 753.) Yet "a parole search could become constitutionally 'unreasonable' if made too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer." (*People v. Clower* (1993) 16 Cal.App.4th 1737, 1741.)

"'[O]fficers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over." (*Schmitz*, 55 Cal.4th at p. 918.) "Homes and cars are afforded different levels of Fourth Amendment protection." (*Id*. at p. 919.) "[T]he expectation of privacy with respect to one's automobile is significantly less than that relating to one's home." (*South Dakota v. Opperman* (1976) 428 U.S. 364, 367.) "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects." (*Cardwell v. Lewis* (1974) 417 U.S. 583, 590.) Accordingly, "[b]oth drivers and passengers have a reduced expectation of privacy in the interior of a car and its contents." (*Schmitz*, at p. 920.)

"[T]he limits of a parole search . . . depend[ ] on the totality of the circumstances, and take[ ] into account such factors as the nature of that area or item, how close and accessible the area or item is to the parolee, the privacy interests at stake, and the government's interest in conducting the search." (*Schmitz*, 55 Cal.4th at p. 923.) As to the search of "closed-off areas," such as a trunk, we consider attendant circumstances, including the "driver's legitimate expectation of privacy in those closed compartments, the passenger's proximity to them, and whether they were locked or otherwise secured." (*Id*. at p. 926, fn. 16.)

6

Here, the dispositive issue is whether the officer reasonably believed Judkins as a probationer subject to a Fourth Amendment waiver had control over or access to the trunk that was searched. Judkins claims he must be treated as a passenger, with no joint control or access to the trunk, as "the owner was present in the vehicle." Yet he provides no authority for his contention that driving "vicariously" for the owner of a car limits his control of the car or determines his status as a passenger.

The present case is distinguishable from *Schmitz*, on which Judkins relies, which concerns the scope of a search related to a passenger's parole status. *Schmitz* held "a vehicle search based on a passenger's parole status may extend beyond the parolee's person and the seat he or she occupies," yet is "confined to those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity." (*Schmitz*, 55 Cal.4th at p. 926.) In contrast, here it is undisputed Judkins was driving the car when the traffic stop was initiated. While not registered in his name, Judkins had joint control of the car he had been driving. Thus, not only was Judkins' expectation of privacy with respect to the trunk of the car significantly diminished, but his joint control of the car allowed the officers to search beyond areas in the car where he could have stowed personal belongings when aware of police activity.

Judkins' reliance on *Claypool v. Superior Court* (2022) 85 Cal.App.5th 1092 is also distinguishable. *Claypool* held the parole status of a backseat passenger did not justify the search of a locked glove compartment as, once aware of police activity, there was "no evidence suggesting the type of movements among the three occupants consistent with secreting the gun into the glove box." (*Id.* at p. 1099.) Judkins analogizes to *Claypool*, stating there

7

is no evidence of him passing objects to the backseat passenger after the police had the car under observation. He further claims it would not have been possible to store the drugs in the trunk while driving on the highway. Yet, when searching the backseat, the officer discovered the sleeve of a jacket lodged in a door between the trunk and rear seat. This gave the officer reasonable suspicion that someone "had just put something in the trunk from the back seat." Thus, unlike *Claypool*, there *was* evidence suggesting the occupants secreted drugs into the trunk once aware of police activity.

Finally, Judkins' reliance on *People v. Carter* (1985) 163 Cal.App.3d 1183 is inapt. *Carter* held an officer's entry into a car to seize an open beer bottle was justified because it was in plain view, thus justifying a search *only* for other open containers of alcohol. (*Id.* at p. 1186.) Yet the officer went beyond the permissible scope of the search when he picked up a rolled-up grocery bag to look for more alcohol, as the bag's weight and feel could not have justified a belief that it contained more open beer bottles. (*Ibid.*) In contrast, here, the officer found evidence of methamphetamine on the backseat passenger's person, prompting him to search the car for further evidence of drug possession and paraphernalia. Drugs, unlike open containers of alcohol, are traditionally stored in a variety of places in a car and can be hidden in smaller quantities. Accordingly, the search here sensibly included areas beyond those found reasonable in *Carter*.

Considering Judkins' joint control of the car, his reduced expectation of privacy due to his Fourth Amendment waiver, and evidence suggesting drugs were secreted into the trunk, the trunk search did not exceed the scope of what is permitted following an arrest.

8

### III.

We affirm.

CASTILLO, J.

WE CONCUR:

DATO, Acting P. J.

KELETY, J.